1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FWK HOLDINGS, LLC,<br><br>                               Plaintiff<br><br>        v.<br><br>BAUSCH HEALTH COMPANIES INC.,<br>SALIX PHARMACEUTICALS, LTD., SALIX<br>PHARMACEUTICALS, INC., SANTARUS,<br>INC., ASSERTIO THERAPEUTICS, INC.,<br>LUPIN PHARMACEUTICALS, INC., and<br>LUPIN LTD.,<br><br>                               Defendants | No. 3:19-cv-05426-WHA<br><br><br>**PLAINTIFFS' MEMORANDUM IN<br>SUPPORT OF MOTION TO APPOINT<br>INTERIM CO-LEAD DIRECT-<br>PURCHASER CLASS COUNSEL** |
| MEIJER, INC. and MEIJER DISTRIBUTION,<br>INC.,<br><br>                               Plaintiffs,<br><br>        v.<br><br>BAUSCH HEALTH COMPANIES INC.,<br>SALIX PHARMACEUTICALS, LTD., SALIX<br>PHARMACEUTICALS, INC., SANTARUS,<br>INC., ASSERTIO THERAPEUTICS, INC.,<br>LUPIN PHARMACEUTICALS, INC., and<br>LUPIN LTD.,<br><br>                               Defendants. | No. 3:19-cv-05822-WHA |
| BI-LO, LLC and WINN-DIXIE LOGISTICS,<br>INC.,<br><br>                               Plaintiffs,<br><br>        v.<br><br>BAUSCH HEALTH COMPANIES INC.,<br>SALIX PHARMACEUTICALS, LTD., SALIX<br>PHARMACEUTICALS, INC., SANTARUS,<br>INC., ASSERTIO THERAPEUTICS, INC.,<br>LUPIN PHARMACEUTICALS, INC., and<br>LUPIN LTD., | No. 3:19-cv-06138-WHA |

|  | |
|---|---|
| Defendants. | |
| KPH HEALTHCARE SERVICES, INC., a/k/a KINNEY DRUGS, INC., individually and on behalf of all others similarly situated, | No. 3:19-cv-06839-WHA |
| Plaintiff, | |
| v. | |
| BAUSCH HEALTH COMPANIES INC., SALIX PHARMACEUTICALS, LTD., SALIX PHARMACEUTICALS, INC., SANTARUS, INC., ASSERTIO THERAPEUTICS, INC., LUPIN PHARMACEUTICALS, INC., and LUPIN LTD., | |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO APPOINT INTERIM CO-LEAD DIRECT PURCHASER CLASS COUNSEL

The plaintiffs in these four related cases,[1] on behalf of themselves and the proposed class of direct purchasers of the drug Glumetza (extended release metformin hydrochloride) and its A/B-rated generic equivalent, jointly move this Court pursuant to Rule 23(g)(1) and (3) to appoint the following attorneys as interim co-lead counsel for the proposed class of direct-purchaser the plaintiffs: Steve Shadowen of Hilliard & Shadowen LLP; Joseph Vanek of Sperling & Slater, P.C.; and Lauren Barnes of Hagens Berman Sobol Shapiro LLP. The plaintiffs also ask the Court to appoint an interim executive committee to assist interim co-lead counsel in prosecuting this action.

### I.     BACKGROUND

On August 29, 2019, FWK filed an action on behalf of itself and a proposed class of direct purchasers that purchased Glumetza and its AB-rated generic equivalents.[2] FWK's complaint alleges that Bausch Health Companies Inc., Salix Pharmaceuticals, Ltd., Salix Pharmaceuticals, Inc.,

---

[1] On November 14, 2019, the parties submitted a Joint Stipulation Seeking Entry of Case Management Order No. 1 to consolidate the above-captioned pending cases under docket number 19-cv-05426.  That order has not yet been entered.

[2] *FWK Holdings, LLC v. Bausch Health Companies Inc. et al.*, 3:19-cv-05426 (WHA).

Santarus, Inc., Assertio Therapeutics, Inc., Lupin Pharmaceuticals, Inc. and Lupin Ltd. (collectively, the defendants) entered into a pay-for-delay agreement to delay generic Glumetza until February 1, 2016 and to allocate the market for branded and generic Glumetza. As a result of the defendants' unlawful anticompetitive conduct, the plaintiffs allege that purchasers (a) were prevented from purchasing a generic version of Glumetza from potentially as early as May 2012 until February 2016; (b) have been forced to pay substantially higher prices for brand Glumetza; and (c) have been forced to pay supracompetitive prices for generic Glumetza after it finally entered the market. The complaint seeks damages and injunctive relief for violations of sections 1 and 2 of the Sherman Act, 15 U.S.C. §1 *et seq*.

Between September 18, 2019 and October 21, 2019, three other direct purchasers filed similar actions, also in this district.[3] Three indirect purchasers have also filed substantially similar complaints seeking relief on behalf of proposed classes of indirect purchasers.[4]

On November 25, 2019, the direct purchasers filed a consolidated complaint.[5] On November 27, 2019, in conjunction with counsel for the defendants and counsel for the indirect purchasers, the parties filed a joint Case Management Statement in these actions.[6]

---

[3] *See Meijer, Inc. and Meijer Distribution, Inc. v. Bausch Health Companies Inc. et al.*, 3:19-cv-05822 (WHA); *Bi-Lo, LLC et al. v. Bausch Health Companies, Inc. et al.*, 3:19-cv-06138 (WHA); *KPH Healthcare Services, Inc. a/k/a Kinney Drugs, Inc. v. Bausch Health Companies Inc. et al.*, 3:19-cv-06156 (WHA).

[4] *City of Providence v. Bausch Health Companies Inc. et al*, 3:19-cv-05831 (WHA), ECF. No. 52.

[5] *FWK Holdings, LLC*, 3:19-cv-05426 (WHA), ECF No. 45. In an abundance of caution, the plaintiffs filed this consolidated complaint in all four direct purchaser dockets. *See Meijer, Inc.*, 3:19-cv-05822 (WHA), ECF No. 53; *Bi-Lo, LLC*, 3:19-cv-06138 (WHA), ECF. No. 44; *KPH Healthcare Services, Inc.*, 3:19-cv-06156 (WHA), ECF. No. 40.

[6] *FWK Holdings, LLC*, 3:19-cv-05426 (WHA), ECF No. 47.

## II.     PROPOSED INTERIM CLASS COUNSEL SHOULD BE APPOINTED TO LEAD THE LITIGATION.

The direct purchasers propose that Steve Shadowen of Hilliard & Shadowen LLP, Joseph Vanek of Sperling & Slater, P.C., and Lauren Barnes of Hagens Berman Sobol Shapiro LLP each be appointed as interim co-lead counsel for the proposed class.[7] The purchasers further propose that A.J. de Bartolomeo of Tadler Law LLP and Mike Roberts of Roberts Law Firm, P.A. be appointed to the direct purchasers' executive committee. This structure, which has the consensus support of all of the plaintiffs, is particularly appropriate given the complexity of the case and the substantial resources the defendants possess. The litigation includes a range of complex legal issues and several defendants, from whom obtaining discovery will require significant effort and resources. Courts in other reverse-payment antitrust cases have approved leadership structures similar to that proposed here.[8] Indeed, many of the same counsel proposed for leadership positions in this case have worked efficiently and cooperatively together in other pharmaceutical antitrust actions.

The attached Proposed Order sets forth the duties and responsibilities of the Proposed Interim Co-Lead Counsel and the executive committee.

---

[7] Class representatives may retain multiple firms to serve as co-lead counsel.  *City of Ann Arbor Employees' Retirement System v. Accuray Inc.*, No. C 09–03362 CW, 2009 WL 3517667, *3 (N.D. Cal. Oct. 26, 2009) (approving lead plaintiffs' choice of co-lead counsel because their selection "demonstrated that they possess extensive experience in the area of securities litigation, and that they have successfully prosecuted numerous securities fraud class actions"); *Query v. Maxim Integrated Products, Inc.*, 558 F. Supp. 2d 969, 975 (N.D. Cal. 2008) (allowing co-lead counsel selection because "the two law firms are qualified and experienced in securities class action litigation to serve as co-lead counsel"); *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1139 (C.D. Cal. 1999) (approving three co-lead counsels and noting that "the geographical diversity of the three co-Lead Counsel should add to, rather than detract from, the efficient handling of this case").

[8] *See, e.g.*, *In re Lidoderm Antitrust Litig.*, No. 14-md-2521 (N.D. Cal. May 23, 2014), ECF No. 63 (appointing three co-leads and a five-member executive committee); *In re Aggrenox Antitrust Litig.*, No. 14-md-2516 (D. Conn. June 16, 2014), ECF No. 95 (appointing three co-leads and a four-member executive committee); *In re Nexium (Esomeprazole) Antitrust Litig.*, No. 12-md-2409 (D. Mass.), ECF No. 85 (appointing four co-leads, a liaison, and a six-member executive committee); *In re Lipitor Antitrust Litig.*, No. 12-cv-02389 (D.N.J. Aug. 10, 2012), ECF 109 (appointing four co-leads, a liaison, and a six-member executive committee).

1

2

**A.     The Rules encourage the appointment of Interim Co-Lead Counsel and doing so will
protect the interests of the plaintiffs.**

3

        Appointment of co-lead counsel accords with Federal Rule of Civil Procedure 23(g) and the

4

*Manual for Complex Litigation (Fourth)* ("the Manual"), facilitates the orderly advancement of the

5

litigation and the protection of the interests of the plaintiffs, and results in substantial efficiency for

6

the parties and the Court.[9]

7

        The Manual recommends that the court select and authorize one or more attorneys or firms to

8

act on behalf of other counsel and their clients early in complex litigation.[10] Counsel so designated

9

"assume a responsibility to the court and an obligation to act fairly, efficiently, and economically in

10

the interests of all parties and parties' counsel."[11] Appointing interim class counsel at this juncture

11

will permit these cases to move forward expeditiously, avoid duplicative work on behalf of the

12

proposed class, and clarify plaintiffs' counsel with whom the defendants need to confer.[12]

13

        According to the Manual, "[f]ew decisions by the court in complex litigation are as difficult

14

and sensitive as the appointment of designated counsel."[13] Lead counsel is charged with formulating

15

(in consultation with other counsel) and presenting positions on substantive and procedural issues.[14]

16

And lead counsel may task sub-committees with preparing briefs or conducting discovery, but should

17

try to avoid unnecessary duplication of efforts and control fees and expenses.[15]

18

        [9] *See* Manual for Complex Civil Litigation §§ 10.22, 10.221 (4th ed. 2009) ; *Dependable*

19

*Component Supply Corp. v. Murata Mfg. Co.*, No. 5:18-CV 00198-EJD, 2018 WL 3388548, at *2

20

(N.D. Cal. Apr. 27, 2018) (acknowledging that a court may designate lead counsel to help simplify
"overlapping, duplicative, or competing class suits … pending before" it under Fed. R. Civ. P. 23(g)
and the Manual).

21

        [10] *Id.*

22

        [11] *Id.*

23

        [12] *Id.*

24

        [13] *Id.* § 10.224 (court's responsibilities regarding role of counsel).

25

        [14] *Id.* § 10.221 (organizational structures). *See id*. § 21.11 ("designation of interim [class] counsel

26

clarifies responsibility for protecting the interests of the class during precertification activities, such
as making and responding to motions, conducting any necessary discovery, moving for class
certification…").

27

        [15] *Id.* § 10.221 (organizational structures).

28

"The most common means of selecting class counsel is the so-called 'private ordering' approach, whereby involved counsel jointly come to a representational consensus and submit their recommendation" for approval.[16] Courts encourage the private ordering process of co-lead counsel selection, particularly where, as here, the litigation will require substantial work by plaintiffs' counsel and significant resources to finance the expenses of the litigation.[17]

**B.      Proposed Interim Co-Lead Counsel readily satisfy the Rule 23(g) factors.**

Because the responsibilities of interim class counsel mirror those of class counsel (appointed after the class has been certified), courts consider the same factors enumerated in Rule 23(g)(1)(A) in selecting interim class counsel.[18] The Federal Rules of Civil Procedure instruct courts to consider the following when appointing class counsel: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation and claims of the type asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.[19]

The court may also consider any other matter "pertinent to counsel's ability to fairly and adequately represent the interests of the class."[20] Of course, at bottom, the Court must conclude "[c]lass counsel [will] fairly and adequately represent the interests of the class."[21]

---

[16] *Four In One Co. v. SK Foods, L.P.,* No. 2:08-CV-03017-MCE EFB, 2009 WL 747160, at *2 (E.D. Cal. Mar. 20, 2009). *See* Manual § 21.272 ("The lawyers agree who should be lead class counsel and the court approves the selection after a review to ensure that the counsel selected is adequate to represent the class interests.").

[17] *See* Manual § 10.22. *See Four In One Co.*, 2009 WL 747160, at *2 ("Efforts of plaintiffs' counsel to coordinate activities between themselves should be encouraged.").

[18] *See*, *e.g.*, *In re AXA Wage & Hour Litig.*, No. C 06-04291 JSW, 2007 WL 4145116, at *1 (N.D. Cal. Nov. 19, 2007) ("a court may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action.'… When appointing interim class counsel, a court must find that the applicant is adequate under Rule 23(g)(1)[(A)].").

[19] Fed. R. Civ. P. 23(g)(1)(A).

[20] Fed. R. Civ. P. 23(g)(1)(B).

[21] Fed. R. Civ. P. 23(g)(2) and (4).

-6-

The proposed co-lead counsel satisfy the applicable criteria for serving as counsel for the proposed class. Each of the proposed co-lead counsel firms worked to identify and investigate the potential claims, drawing on experience with approval, marketing, and pricing of pharmaceuticals, patent law, economics, and antitrust law; is experienced in handling complex class actions and antitrust litigation, particularly pharmaceutical litigation, on behalf of purchasers; possesses in-depth knowledge of the applicable law; and has adequate resources to commit to representing the proposed class.[22]

The firms are all experienced antitrust class action firms, have worked collegially and collaboratively on many similar antitrust cases, and have substantial experience working in a wide range of complex antitrust matters. As described in the firm resumes attached as Exhibits A, B, C, and D, attorneys at these firms have decades of experience litigating some of the nation's most complicated antitrust class actions and have successfully recovered billions of dollars in damages for class members. The firms have the financial, personnel, and experiential resources necessary to prosecute this action and will devote those resources to the prosecution of this action in the best interest of the class.[23]

### 1.     Steve Shadowen, Hilliard & Shadowen LLP

Mr. Shadowen has been representing plaintiffs in antitrust litigation for more than 25 years. Over his extensive career, he has been hired to represent some of the nation's largest pharmaceutical purchasers, including CVS Caremark, Inc., and Rite Aid Corp., as plaintiffs in pharmaceutical antitrust cases, and has been appointed by courts to represent classes of both direct purchasers and end payors.

---

[22] *See* Fed. R. Civ. P. 23(g)(1).

[23] *See Walker v. Discover Financial Services*, 2011 WL 2160889, at *3-4 (N.D. Ill. May 26, 2011) (appointing as interim class counsel firms that were the first to file putative class action complaints after having performed the most work in identifying and investigating the claims); *In re Municipal Derivatives Antitrust Litig.*, 252 F.R.D. at 186 (appointing as interim class counsel firms that had done significant work "identifying and investigating potential claims in th[e] action" and "filed the first complaints").

He has been lead or co-lead counsel on behalf of purchaser plaintiffs in multiple groundbreaking pharmaceutical antitrust cases, including, *inter alia*:

- *In re Relafen Antitrust Litig.,* Master File No. 01-cv-12239 (D. Mass.) (challenging scheme to mislead the U.S. Patent and Trademark Office and prosecute sham litigation against potential generic competitors regarding the non-steroidal anti-inflammatory drug Relafen);

- *In re Brand Name Prescription Drug Litig.*, MDL No. 997 (N.D. Ill.) (challenging price discrimination and price-fixing agreements by every major pharmaceutical manufacturer selling prescription drugs in the U.S.);

- *In re Cardizem CD Antitrust Litig.*, No. 99-md-1278 (E.D. Mich.) (challenging reverse payment agreements regarding the hypertension drug Cardizem CD);

- *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, No. 00-md-1383 (E.D.N.Y.) (challenging reverse payment agreements regarding the antibiotic Cipro);

- *In re K-Dur Antitrust Litig.*, MDL No. 1419 (D.N.J.) (challenging reverse payment agreements regarding the potassium supplement drug K-Dur);

- *King Drug Co. of Florence, Inc. v. Cephalon, Inc.,* Master File No. 07-cv-1797 (E.D. Pa. 2010) (challenging reverse payment agreements between Cephalon and four generic manufacturers regarding the wakefulness drug Provigil);

- *Louisiana Wholesale Drug Co., Inc. v. Abbott Labs.*, Master File No. 05-cv- 340 (D. Del.) (challenging exclusionary scheme to block generic versions of the cholesterol drug Tricor by successively reformulating the drug in a manner that provided no medical benefit);

- *Meijer, Inc. v. Barr Pharmaceuticals, Inc.*, Master File No. 06-cv-795 (D.D.C.) (challenging exclusive supply agreement that prohibited generic competitor from launching a generic version of the contraceptive Ovcon);

- *In re Nifedipine Antitrust Litig.,* MDL No. 1515 (D.D.C.) (challenging conspiracy among potential competitors that prevented generic versions of the hypertension drug Adalat CC from entering the market);

- *In re Neurontin Antitrust Litig.*, MDL No. 1479 (D.N.J.) (challenging scheme to prevent generic competition to epilepsy drug Neurontin by obtaining patents through misconduct before the U.S. Patent and Trademark Office, improperly listing patents in the Orange Book, filing sham patent litigation suits against potential generic competitors, and marketing Neurontin for off-label uses);

- *In re Remeron Antitrust Litig.*, Master File No. 03-cv-85 (D.N.J.) (challenging brand manufacturer's improper Orange Book listing and use of sham litigation to delay generic competition);

- *Safeway, Inc. v. Abbott Labs*., Master File No. 07-cv-5470 (N.D. Cal.) (challenging bundled pricing and refusal to deal regarding protease inhibitors used to treat HIV);

- *In re Terazosin Hydrochloride Antitrust Litig*., No. 99-MDL-1317 (S.D. Fla.) (challenging reverse payment agreements regarding the drug Hytrin);

- *In re Nexium (Esomeprazole Magnesium) Antitrust Litig.,* No. 12-md-2409-WGY (D. Mass.) (challenging reverse payment agreements used to suppress generic competition for Nexium);

- *In re Suboxone (Buprenorphine Hydrochloride and Nalaxone) Antitrust Litig.,* 13-MDL-2445 (ED Pa) (challenging brand manufacturer's scheme involving product hopping and a sham citizen's petition regarding the drug Suboxone);

- *In re Solodyn (Minocycline Hydrochloride) Antitrust Litigation*, 14-md-02503 (D. Mass) (challenging reverse payment agreements used to suppress generic competition for Solodyn);

- *In re Loestrin Antitrust Litig.*, 13-md-02472 (D.R.I.) (challenging reverse payment agreements and a product hop used to suppress generic competition for Loestrin);

- *In re Actos End-Payor Antitrust Litig.*, 12-cv-09244 (S.D.N.Y.) (challenging brand manufacturer's improper Orange Book listing to delay generic competition);

- *In re Ranbaxy Generic Drug Application Antitrust Litig.* 19-md-02878 (D. Mass.) (challenging generic manufacturer's use of fraudulent FDA filings to exclude competition);

- *Staley v. Gilead Sciences, Inc.,* No. 3:19-cv-02573-EMC (N.D. Cal.) (challenging scheme to monopolize HIV cART market).

Mr. Shadowen presented the appellate arguments on behalf of the purchaser plaintiffs in all three of the cases in which the appellate panels held that "reverse payment" agreements are subject to substantial antitrust scrutiny. *In re K-Dur Antitrust Litig*., 686 F.3d 197 (3d Cir. 2012); *Arkansas Carpenters Health & Welfare Fund v. Bayer AG*, 604 F.3d 98, 110 (2d Cir. 2010); *In re Cardizem CD Antitrust Litig*., 332 F.3d 896, 908 (6th Cir. 2003). The Supreme Court subsequently confirmed the antitrust standard that Mr. Shadowen and others had been advocating for more than a decade. *FTC v. Actavis*, *Inc*., 570 U.S. 136 (2013). Mr. Shadowen has been a lead trial counsel in major pharmaceutical antitrust cases in this district and elsewhere. *See, e.g.*, *Safeway, Inc. v. Abbott Labs*., 761 F. Supp. 2d 874 (N.D. Cal. 2011); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 14-md-02503 (D. Mass. 2018); *In re Nexium (Esomeprazole Magnesium) Antitrust Litig.,* No. 12-

md-2409-WGY (D. Mass. 2015); *Abbott Labs. v. Teva Pharmaceuticals, U.S.A., Inc.*, 532 F. Supp. 2d 408 (D. Del. 2006). He serves on the advisory boards of the American Antitrust Institute and the Institute for Consumer Antitrust Studies and regularly publishes scholarly articles on antitrust issues, as well as civil and human rights.

Additional information on Mr. Shadowen and his law firm can be found in materials attached as Exhibit A to the accompanying Barnes Declaration and at the firm's website: www.hilliardshadowenlaw.com.

### 2.    Joe Vanek, Sperling & Slater, P.C.

Mr. Joseph Vanek is a member of Sperling & Slater, P.C. ("S&S") and has been practicing law for over 30 years.  Mr. Vanek and S&S have extensive experience in commercial litigation in the class action context. They have represented plaintiffs in class actions in pharmaceutical matters and other matters on numerous occasions for over 20 years.  Such representation includes, without limitation, the representation of class plaintiffs in the following past and active matters:

- *In re: Skelaxin (Metaxalone) Antitrust Litig.*,1:12-md-2343,  (E.D.  TN) (pharmaceutical antitrust matter) (settled);

- *King Drug Company of Florence, Inc., et al. v. Cephalon, Inc., et al.*, No. 06-cv-1797 (E.D. Pa.) (pharmaceutical antitrust matter) (partially settled);

- *Mylan Pharmaceuticals Inc. v. Warner Chilcott Public Limited Company, et al.*, No. 23-3824 (E.D. Pa.) (pharmaceutical antitrust matter) (settled);

- *Meijer, Inc. v. Abbott Laboratories*, No. 07-5985 (N.D. Cal) (pharmaceutical antitrust matter) (settled);

- *In re Tricor Indirect Purchasers Antitrust Litig.*, No. 05-cv-0340 (D. Del.) (pharmaceutical antitrust matter) (settled);

- *In re Brand Name Prescription Drug Antitrust Litig.*, 94 C 897 (N.D. Ill.);

- *In re Asacol Antitrust Litig.*, No. 1:15-cv-12730 (D. Mass) (pharmaceutical antitrust matter) (settled);

- *In re: Suboxone and. Nalaxone Antitrust Litig.*, No. 13-md-2445 (E.D Pa.) (active);

- *In re Androgel Antitrust Litig.*, No. 1:09–md-2084 (N.D. Ga.)  (pharmaceutical

-10-

matter) (active);

- *In re: Optical Disk Drive Antitrust Litig.*, No. 3:10-md-2143 (N.D. Cal.) (electronics antitrust matter) (settled);

- *Piggly Wiggly Midwest LLC v. National Milk Producers Federation*, No. 3:13-cv-00454 (S.D. Ill.) (agricultural antitrust matter) (active);

- *In re Scouring Pads Antitrust Litig.*, No. 93 C 6594 (N.D. Ill.) (consumer scouring product antitrust matter) (settled); and

- *In re Vitamin Litig.*, No. MDL 1285 (D.D.C.) (consumer vitamin product antitrust matter) (settled).

- Additional information on Mr. Vanek and Sperling & Slater can be found at the firm's website: www.sperling-law.com.

### 3.      Lauren Barnes, Hagens Berman Sobol Shapiro LLP

Hagens Berman Sobol Shapiro LLP ("HBSS") is a demonstrated leader in complex litigation, known for pioneering cutting-edge cases, applying its dedication and knowledge to pursue innovative theories and strategies, and delivering results. The firm has led the fight for more affordable prescription drugs and a more responsible pharmaceutical industry for nearly two decades, winning billions of dollars for the classes it has had the privilege to represent in its 25 years of existence.

Lauren Barnes is a partner in the Boston office of HBSS, where she has worked for sixteen years, almost exclusively on healthcare litigation. Ms. Barnes cut her teeth on the firm's AWP pharmaceutical pricing litigation as a law student and since then has led or helped lead multiple pharmaceutical fraud and antitrust cases on behalf of private and public purchasers, including *Connecticut v. Eli Lilly & Co.*, *In re Skelaxin (Metaxalone) Antitrust Litig.*, *In re Solodyn Antitrust Litig.*, and *In re Intuniv Antitrust Litig.* Given her experience managing complex litigation with multiple counsel and her in-depth knowledge of the pharmaceutical industry, Ms. Barnes is well-qualified to lead this matter. Ms. Barnes is also a respected leader in the bar, having chaired the American Association for Justice's Class Action Litigation Group, Antitrust Litigation Group, and Women's Caucus, and been honored with multiple awards from the organization, and written and

-11-

spoken on litigation and civil justice issues. Additional information on Ms. Barnes and HBSS can be found in materials attached as Exhibit B to the Barnes Declaration and at the firm's website: www.hbsslaw.com.

HBSS is second to none in its depth of pharmaceutical pricing knowledge and experience in pharmaceutical matters. HBSS has substantial experience with the tasks unique to complex litigation, including working with investigators and forensic accountants, supervising large teams of lawyers analyzing discovery documents, and finding and engaging highly qualified expert witnesses and consultants. Indeed, HBSS has established relationships with the top experts in the pharmaceutical pricing field, including health care economists and ex-industry representatives. And the firm routinely takes class cases to trial.[24] As a result, HBSS partners have been appointed lead, co-lead, or liaison counsel in more than forty pharmaceutical antitrust or pricing matters.

HBSS's practice is simple: the firm and its lawyers do not waver in applying the resources needed and taking cases through years of discovery, motion practice, trial, and appeals, as necessary, settling only if the firm believes class members will obtain real relief. That ethos guided its investigation and work in the matter to date and will do so moving forward.

Ms. Barnes and HBSS can collaboratively lead this case from an unmatched position of expertise and knowledge and will work with the other co-lead counsel to do so efficiently, for the benefit of the class.

## C. The proposed executive committee members are highly qualified.

The plaintiffs also request appointment of the following two individuals and their firms as members of the executive committee.[25] Both are highly experienced in complex class action

---

[24] These include, among others, *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, MDL No. 2541 (N.D. Cal.); *In re Neurontin Mktg. & Sales Practices Litig.*, MDL No. 1629 (D. Mass.); and *In re Pharm. Indus. Average Wholesale Price (AWP) Litig.*, MDL No. 1456, No. 01-12257 (D. Mass.).

[25] The Manual recognizes that appointing a team of attorneys to serve on an executive committee may also best serve the interests of the class. Manual § 22.62 ("Often counsel will agree among themselves as to who should . . . assume positions on counsel committees."); 3 Newberg on Class Actions § 9:34 (4th ed.) ("As the number of litigants with separate counsel multiplies, steering committees may be created by court order or may arise informally by agreement of the parties. In

-12-

litigations, including cases involving the pharmaceutical industry, and will bring their expertise to bear in assisting Proposed Interim Co-Lead Counsel to the benefit of the plaintiffs. Additional information about each individual and his or her firm can be found in Exhibits C-D to the Barnes Declaration.

**A.J. de Bartolomeo, Tadler Law LLP:**

A.J. de Bartolomeo is a shareholder of Tadler Law LLP in the firm's San Francisco office, with nearly thirty years of experience prosecuting class actions, complex and collective matters in courts throughout the country. Ms. de Bartolomeo has earned a national reputation in class actions and complex actions as a zealous and passionate advocate. As noted by Chief Judge David Herndon (Ret.), "[S]he is not only extremely intelligent but is tireless in her representation of her clients and no one cares more about doing a great job for her clients than A.J." Because of her experience and character, Ms. de Bartolomeo has been appointed by Courts as Lead or Co-Lead Counsel, or as a Plaintiffs' Steering Committee member in numerous MDL class action, mass torts and bankruptcy proceedings, including among others *In re Avandia Marketing, Sales Practices and Products Liability Litig.*, MDL No. 1871, *In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litig.*, MDL 2100, and *In re Actos (Pioglitazone-Products Liability Litig.*, MDL No. 6:11-md-2299. Ms. de Bartolomeo currently serves as lead counsel in the individual Equal Pay and Title VII action *Hope Solo v. United States Soccer Federation*, Case No. 3:18-cv-05215 (N.D. Cal.).

Ms. de Bartolomeo is committed to advancing opportunities for women lawyers. She is the former Chair of the Women's Trial Lawyer Caucus of the American Association of Justice (2015-2016), where she oversaw the caucus's work in leadership training, student scholarship, membership and political outreach, and other pro-civil justice functions. She has been a member of the AAJ Board of Governors since 2015. She is also an active member of the American Bar Association Sections on Tort Trial and Insurance Practice and the Consumer Attorneys of California (Board of

addition, the Manual notes that committees of counsel, when appropriate, may well serve the overall best interests of conflict avoidance in the litigation.").

Directors 2016–present). Ms. De Bartolomeo is frequently an invited speaker before industry

organizations and public corporations on the subjects of ethical procedures for client and case

management in complex litigation and MDL's, pharmaceutical fraud, Daubert challenges, Federal

Rule 37, and corporate litigation risk management and compliance procedures. She has written

articles on class action settlement procedures and other litigation best practices.

**Mike Roberts, Roberts Law Firm, P.A.:** Mr. Roberts has decades of expertise in private

antitrust class action litigation, in particular in pharmaceutical antitrust litigation. Mr. Roberts is

licensed in Arkansas, Florida, Tennessee, Texas, New York and Illinois. He is also licensed before

the United States Supreme Court and many U.S. Federal District Courts in the U.S.[26]

Michael Roberts has significant leadership experience in complex commercial litigation,

including appointments as co-lead counsel, class counsel, and to plaintiffs' executive committees.[27]

Mr. Roberts has also had significant involvement with other complex, consumer actions.[28] Mr.

---

[26] Mr. Roberts's curriculum vitae is attached as Exhibit D to the Barnes Declaration.

[27] Specifically, Mr. Roberts' significant involvement in antitrust class actions includes the following: *In re Generic Pharmaceuticals Pricing Litig.*, MDL No. 2724 (E.D. Pa.) (PSC Member); *Aftermarket Sheet Metal Antitrust Litig.*, 2:09-cv-00852 (E.D. Wis.) (Co-Lead Counsel for Indirect Purchaser Plaintiffs and Class Counsel); *In re Parking Heaters Antitrust Litig.*, 15-mc-940-JG-JO (E.D.N.Y.) (Appointed Co-Lead Interim Counsel for Direct Purchaser Plaintiffs); *In re Wellbutrin SR Antitrust Litig.*, 2:04-cv-05525 (E.D. Pa.) (Trial Team); *In re Nifedipine Antitrust Litig.*, MDL No. 1515 (D.D.C.) (Class Counsel); *In re Augmentin Antitrust Litig.*, 04-cv-23 (E.D. Va.) (Class Settlement Counsel); *In Re: Imodium Advanced Antitrust Litig.*, No. 04-CIV-00799 (RJL) (E.D. Pa.) (Class Counsel); *In re Hypodermic Products Antitrust Litig.* MDL No. 1730 (D.N.J.) (Class Counsel); *In Re U. S. DRAM Antitrust Litig.*: (Class Counsel); *In re: U.S. SRAM Antitrust Litig.*, 4:07-md-1819 CW (N.D. Cal.) (Class Counsel) *In Re: Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 05-MD-1720(JG)(JO) (E.D.N.Y.) (Class Counsel); *In re Microsoft Antitrust Litig.*: *Paul Peek, D.D.S., and Mark Miles, et al. v. Microsoft Corp.*, Circuit Court of Lonoke County, Arkansas, First Division, No. CV2004-480 (Co-Lead Counsel) (case settled); *In re Effexor XR Antitrust Litig.*, 11-cv-05479 (D.N.J.) (Discovery Committee Co-Chair); *In re: Lipitor Antitrust Litig.*, 3:12-cv-05129 (D.N.J.) (Class Counsel); *In re Hypodermic Products Antitrust Litig.* MDL No. 1730 (D.N.J.) (Class Counsel); *In re Prograf Antitrust Litig.*, 11-cv-10344 (D. Mass.) (Class Counsel); *In re Skelaxin Antitrust Litig.*, 1:12-md-02343-CLC (E.D. Tenn.) (Class Counsel); and *In re: Children's Ibuprofen Oral Suspension Antitrust Litig.*, 1:04-mc-00535 (D.D.C.) (Class Counsel).

[28] *National Trucking Financial Reclamation Services, LLC vs. Pilot Corporation, Pilot Travel Centers d/b/a Pilot Flying J, et al*, United States District Court for the Eastern District of Arkansas,

-14-

Roberts has demonstrated an ability to organize and manage large cases and to cooperate with counsel for all of the involved parties. Mr. Roberts and his firm possess and will devote the resources necessary to assist in the prosecution of this litigation on behalf of the direct purchaser class, as they have in other complex antitrust actions. Mr. Roberts' firm's business model allows its attorneys to devote their time to complex direct purchaser actions such as this one, and to advance the funds necessary to obtain and review large numbers of complex documents, take dispositions, and retain experts. Mr. Roberts' firm will do so in this case. Additional information about Mr. Roberts, his firm, and the experience of attorneys who will staff this matter, is available at the firm's website, http://robertsgroup.us/roberts-law-firm/about-us/.

### III.   CONCLUSION

Consistent with the Rules and the Manual's recommendation to establish an organizational structure for counsel in furtherance of the ultimate goal of achieving "efficiency and economy" in the litigation and representing the proposed class fairly and adequately, for the foregoing reasons, the plaintiffs respectfully request that the Court appoint Steve Shadowen, Joe Vanek, and Lauren Barnes as Proposed Interim Co-Lead Counsel and appoint the executive committee.

Respectfully submitted,

DATED: December 3, 2019

By:   */s/ A.J. de Bartolomeo*

---

Case No.:  4:13-cv-00250-JMM. (Appointed Co-Lead Counsel; case settled in nine months for $84 million plus injunctive relief); *In re Heartland Payment Systems Inc. Customer Data Security Breach Litig.*, 09-MD-2046 (S.D. Tex.) (Appointed as Member of Steering Committee); and *Ori v. Fifth Third Bank and Fiserv, Inc*., 08-cv-00432 (E.D. Wis.) (Co-Lead Settlement Class Counsel).

A.J. De Bartolomeo
**Tadler Law LLP**
P.O. Box 475847
San Francisco, CA 94123
Telephone: (212) 631-8689
Fax: (212) 273-4375
Email: ajdebartolomeo@tadlerlaw.com

Steve Shadowen (admitted *pro hac vice*)
Matthew C. Weiner (admitted *pro hac vice*)
Nicholas Shadowen (admitted *pro hac vice*)
**HILLIARD & SHADOWEN LLP**
1135 w. 6th Street, Suite 125
Austin, TX 78703
Telephone: (855) 344-3298
steve@hilliardshadowenlaw.com
matt@hilliardshadowenlaw.com
nshadowen@hilliardshadowenlaw.com

*Counsel for FWK Holdings LLC*


By: /s/ *Lauren Guth Barnes*
Lauren G. Barnes (admitted *pro hac vice*)
Thomas M. Sobol (admitted *pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone: (617) 482-3700
Fax: (617) 482-3003
Tom@hbsslaw.com
Lauren@hbsslaw.com

Shana E. Scarlett (SBN 217895)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Fax: (510) 725-3001
Email: shanas@hbsslaw.com

Joseph M. Vanek (admitted *pro hac vice*)
David P. Germaine (admitted *pro hac vice*)
Eamon P. Kelly (admitted *pro hac vice*)
Alberto Rodriguez (admitted *pro hac vice*)
John P. Bjork (admitted *pro hac vice*)
**SPERLING & SLATER**
55 w. Monroe Street, Suite 3200
Chicago, IL 60603
jvanek@sperling-law.com
dgermaine@sperling-law.com
ekelly@sperling-law.com
arodriguez@sperling-law.com

jbjork@sperling-law.com

*Counsel for Meijer, Inc. and*
*Meijer Distribution, Inc.*

By: /s/ *Lauren Guth Barnes*
Lauren G. Barnes (admitted *pro hac vice*)
Thomas M. Sobol (admitted *pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone: (617) 482-3700
tom@hbsslaw.com
lauren@hbsslaw.com

Shana E. Scarlett (SBN 217895)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 715-3000
shanas@hbsslaw.com

Steve Shadowen (admitted *pro hac vice*)
Matthew C. Weiner (admitted *pro hac vice*)
Nicholas Shadowen (admitted *pro hac vice*)
**HILLIARD & SHADOWEN LLP**
1135 w. 6ᵗʰ Street, Suite 125
Austin, TX 78703
Telephone: (855) 344-3298
steve@hilliardshadowenlaw.com
matt@hilliardshadowenlaw.com
nshadowen@hilliardshadowenlaw.com

*Counsel for Bi-Lo, LLC and Winn-Dixie Logistics*

By: /s/ *A.J. de Bartolomeo*
A.J. De Bartolomeo
**Tadler Law LLP**
P.O. Box 475847
San Francisco, CA 94123
Telephone: (212) 631-8689
Fax: (212) 273-4375
Email: ajdebartolomeo@tadlerlaw.com

Michael L. Roberts (admitted *pro hac vice*)
Debra G. Josephson (admitted *pro hac vice*)
Stephanie E. Smith (admitted *pro hac vice*)
Sarah E, DeLoach (admitted *pro hac vice*)
**ROBERTS LAW FIRM, P.A.**
20 Rahling Circle
Little Rock, Arkansas 72223

-17-

1

Telephone: (501) 821-5575
Fax: (501) 821-4474
mikeroberts@robertslawfirm.us
debrajosephson@robertslawfirm.us
stephaniesmith@robertslawfirm.us
sarahdeloach@robertslawfirm.us

2

3

4

5

*Counsel for KPH Healthcare Services, Inc. a/k/a Kinney Drugs, Inc.*

6

7

8

9

10

**E-FILING ATTESTATION**

11

12     I, Lauren G. Barnes, am the ECF User whose ID and password are being used to file this

13  document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories

14  identified above has concurred in this filing.

15

16          */s/ Lauren G. Barnes*
        Lauren G. Barnes

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO APPOINT INTERIM CO-LEAD DIRECT-
PURCHASER CLASS COUNSEL
Lead Case No: 3:19-cv-05426-WHA