UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| In re | No. C 19-05822 WHA |
|---|---|
| GLUMETZA ANTITRUST LITIGATION. | No. C 19-06138 WHA<br>No. C 19-06839 WHA<br>No. C 19-07843 WHA<br>No. C 19-08155 WHA<br>No. C 20-01198 WHA |
| This Document Relates to: | No. C 20-05251 WHA |
| HUMANA ACTION. | (Consolidated) |
| | **ORDER RE MOTION TO DISMISS HUMANA COMPLAINT** |

**INTRODUCTION**

Eleven months into this antitrust lawsuit, months into discovery, and on the eve of class certification, a new plaintiff seeks to join the recovery. The complaint failing to adequately plead the location of the purchases, standing to raise state claims remains speculative. The motion to dismiss is **GRANTED IN PART**.

**STATEMENT**

Prior orders detail the underlying allegations (Dkt. Nos. 188, 347). Simply put, our plaintiffs allege that defendants, prime among them, Bausch Health Companies Inc., Lupin Pharmaceuticals, Inc. and Lupin Ltd., and Assertio Therapeutics, Inc., concocted a pharmaceutical-patent infringement settlement in violation of the antitrust laws. Some iteration of Bausch has marketed the prevalent diabetes brandname-drug Glumetza since 2005. In July 2009, generic manufacturer Lupin sought Food and Drug Administration approval to market a generic Glumetza. Assertio, holder of the relevant drug patents, and a Bausch predecessor sued

1  for infringement. The parties settled in February 2012. Lupin would drop its challenge to the
2  patents' validity, cease efforts to market until 2016, and enjoy a period of duopoly between its
3  generic and the brand drug once it did enter the market, as Assertio and company agreed to
4  neither launch their own "authorized generic" nor license any other generics in that period.

5  On the other side of grotesque price hikes, some perhaps indiscrete words on a public
6  earnings call, a round of Congressional testimony, and several years for the information to
7  percolate, plaintiffs began to sue in late August 2019. Eleven cases arrived by March 5, 2020,
8  when the undersigned largely denied defendants' motions to dismiss the direct purchasers but
9  granted the motions in part against the indirect purchasers, who all subsequently dismissed
10 (Dkt. No. 188). The remaining direct purchasers proceeded in two groups: (1) the direct-
11 purchaser plaintiffs and putative class; and (2) the retailer plaintiffs. An August 15 order
12 certified the class of direct purchasers.

13 On July 30, 2020, eleven months after the case began and well through discovery, the
14 healthcare conglomerate Humana Inc. sued on behalf of its numerous subsidiaries, asserting
15 both direct and indirect-purchaser antitrust claims, as well as a slew of related state law claims.
16 Following defendants' motion to dismiss, Humana took its one free amendment. Defendants
17 again move. This order follows full briefing and oral argument (held telephonically due to
18 COVID-19).

19                                **ANALYSIS**

20 A complaint must allege sufficient factual matter to state a facially plausible claim for
21 relief. Allegations merely consistent with liability don't cut it; rather the allegations must
22 indicate or permit the reasonable inference, without speculation, of defendants' liability for the
23 conduct alleged. We take as true all factual allegations but legal conclusions merely styled as
24 fact may be disregarded. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v.*
25 *Twombly*, 550 U.S. 544, 555 (2007).

26 Only direct purchasers may bring federal antitrust claims. *Illinois Brick Co. v. Illinois*,
27 431 U.S. 720 (1977). So Humana brings its indirect purchaser antitrust claims under the laws of
28 the several states. But though Humana has allegedly consolidated both these direct and indirect

United States District Court
Northern District of California

purchaser claims in a single entity, its complaint fails to distinguish between these two forms of purchase.

The complaint alleges that Humana's subsidiary pharmacy arm, Humana Pharmacy Inc. ("HPI"), purchased the Glumetza sued upon and specifies dollar amounts of 500mg and 1000mg directly purchased from Lupin. The complaint also alleges the dollar amounts of Glumetza purchases offered as the basis for the state antitrust claims. Defendants note that these the list of purchases by state does not specify which of those purchases were direct and which were indirect, thus raising, the specter of duplicative recovery, given Humana raises both direct and indirect-purchaser antitrust claims. *See Kansas v. UtiliCorp United*, 497 U.S. 199, 212–13 (1990). The parties primarily dispute whether this must be addressed now or in discovery, though it is worth noting that discovery is nearly complete, and Humana has enjoyed discovery already for the last several months (Dkt. Nos. 352, 383). This order, however, discerns a more fundamental problem with the pleadings.

Federal jurisdiction rests on "the irreducible constitutional minimum of standing." The invoking party must show a concrete, particularized, and actual or imminent (as opposed to conjectural or hypothetical) injury in fact, fairly traceable to the defendant's conduct, which will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The March 5 order made clear that indirect-purchaser antitrust claims require both a plaintiff and her purchase in each state whose law is invoked because "the injury a plaintiff suffers defines the scope of the controversy he or she is entitled to litigate." *Melendres v. Arpaio*, 784 F.3d 1254, 1261 (9th Cir. 2015).

Our problem stems from Humana's hierarchy of subsidiaries, whose assigned claims Humana sues upon. The complaint lists about thirty subsidiaries who "cover the medical expenses incurred by plan beneficiaries" in all fifty states, the District of Columbia, and Puerto Rico. But the complaint also alleges that Humana's in-house pharmacy, HPI, "buys prescription drugs directly from manufacturers and wholesalers and dispenses them to Humana's benefits plan members." The complaint does *not* allege that plan beneficiaries or local subsidiaries have obtained Glumetza from any other source.

3

As a result, the complaint relies upon the Humana-subsidiary plan beneficiaries to locate actual distribution of Glumetza to the fifty states, D.C., and Puerto Rico. But *HPI is Humana's point-of-sale for Glumetza* from external sources. True, the complaint alleges "purchases" in every state. But read in context, the alleged local purchases of Glumetza appear to be just Humana exchanging the drug with itself. A plaintiff cannot purchase a product in one state, walk across the border to another, and exchange the product and money from her right hand to her left hand and claim fresh injury to concoct standing. On these pleadings, Humana's injury in fact attached to *HPI's purchases* of Glumetza, not when Humana ultimately distributed the drug to its members.

So, the locations of Humana's plan members do not support standing under the laws of the several states. Yet Humana's complaint fails to allege HPI's location or locations. Simply put, the complaint does not allege *where* HPI's actual purchases of Glumetza underlying Humana's state law claims occurred. "The corollary to taking the complaint's factual allegations as true is that we do not then assume facts into the complaint." *Stemmelin v. Matterport, Inc.*, No. C 20-04168 WHA, 2020 WL 6544456, at *5 (N.D. Cal. Nov. 7, 2020). We cannot conclude without speculation, then, which purchases fall under the purview of which states' laws. It is no response to say that the individual state laws would not make the distinctions here. State courts are not bound by Article III. *See ASARCO v. Kadish*, 490 U.S. 605, 617 (1989). All plaintiffs in federal court, regardless of claim for relief, require standing, else the requirement would not be so "irreducible." *Lujan*, 504 U.S. at 560. Humana's complaint fails to locate the actual purchases underlying its state law claims and thus fails to place such claims within the purview of the invoked jurisdictions to Article III's satisfaction. All state law claims must, therefore, fail.

Recognizing that Humana's federal claims are, in essence, an opt-out of the direct-purchaser class, defendants largely reserve their challenges for summary judgment. Assertio contends alone, in what it characterizes as slightly different from the question addressed by the March 5 order, that the claims against it must be dismissed as Assertio affirmatively withdrew from the alleged conspiracy long ago and overt actions under the continuing violations doctrine

4

cannot be imputed between co-conspirators.  Resolution of this argument may affect more plaintiffs than Humana.  Without expressing any view on the merits, this order reserves this question for summary judgment when all interested parties will be heard.

## CONCLUSION

To the foregoing extent, defendants' motion is **GRANTED IN PART**.  Humana's federal claims may proceed; all state claims are **DISMISSED** for lack of standing given Humana's failure to allege where the relevant purchases occurred.  This order does not reach the remainder of defendants' arguments, including issues regarding the statutes of limitations.

Humana arrived late on its own accord and has already enjoyed its one free amendment. The time to amend pleadings has long passed (Dkt. Nos. 71, 188, 383), the undersigned has already made clear that it is Humana's duty to get up to speed (Dkt. No. 345).  Further leave to amend is not warranted, with one exception.

It remains conceivable that Humana could replead to establish standing based upon the locations of Glumetza purchases by HPI (or another Humana arm) from an external source. Humana may move to amend its complaint, within these strict bounds, by **DECEMBER 17 AT NOON**.  Given Humana has enjoyed several months' notice of the law of standing in this case (Dkt. No. 188), such amendment will be governed by Rule 16's good cause standard and will presumably face defendants' renewed statute of limitations challenge.  Any such motion must include as an exhibit a redlined version of the proposed amendment that clearly identifies all changes from the amended complaint.  This order highlighted certain deficiencies in the amended complaint, but did not reach many issues.  It will not necessarily be enough to add sentences parroting each missing item identified herein.  If Humana moves for leave to amend, it should be sure to plead its best case.

**IT IS SO ORDERED.**

Dated:  December 5, 2020.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE