# Exhibit 1

1

2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

3

4

5

*IN RE GLUMETZA ANTITRUST LITIGATION*

No. 3:19-cv-05822-WHA

(Consolidated)

6

This Document Relates To:

7

8

*Meijer, Inc. et al. v. Bausch Health Companies, Inc. et al.*, No. 3:19-cv-05822-WHA

9

*Bi-Lo, LLC et al. v. Bausch Health Companies, Inc. et al.*, No. 3:19-cv-06138-WHA

10

11

*KPH Healthcare Services, Inc. v. Bausch Health Companies, Inc. et al.*, No. 3:19-cv-06839-WHA

**SETTLEMENT AGREEMENT**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

This Settlement Agreement is made and entered into on September __, 2021 by and between plaintiffs Meijer, Inc., Meijer Distribution, Inc., BI-LO LLC, Winn-Dixie Logistics, Inc., and KPH Healthcare Services, Inc. ("Plaintiffs"), individually and on behalf of the direct purchaser class as defined below (the "Direct Purchaser Class"), by and through Hagens Berman Sobol Shapiro LLP attorneys Lauren G. Barnes and Shana E. Scarlett, Sperling & Slater, P.C. attorney Joseph M. Vanek, and Hilliard & Shadowen LLP attorney Steve Shadowen, in their capacity as attorneys and lead class counsel ("Lead Class Counsel") for the Direct Purchaser Class in *In re Glumetza Antitrust Litigation*, C.A. No. 3:19-cv-05822-WHA (the "Action"), and defendants Lupin Pharmaceuticals, Inc. and Lupin Ltd. ("Lupin"), by and through Kirkland & Ellis LLP attorneys Jay P. Lefkowitz and Devora W. Allon. This Settlement Agreement is intended to, and upon occurrence of the Effective Date will, fully, finally, and forever resolve, compromise, discharge, and settle the claims of the Direct Purchaser Class in this Action as to Lupin, subject to the terms and conditions set forth herein. The Settlement Agreement resolves claims brought on behalf of the Direct Purchaser Class[1] against Lupin only, and does not resolve, compromise, discharge, or settle any of the claims of Plaintiffs or the Direct Purchaser Class against defendants Bausch Health Companies Inc., Salix Pharmaceuticals, Ltd., Salix Pharmaceuticals, Inc., and Santarus, Inc. ("Bausch") or defendant Assertio Therapeutics, Inc. ("Assertio").

## RECITATIONS

WHEREAS, on August 29, 2019, this Action[2] was commenced on behalf of a class of businesses that purchased brand or generic extended release metformin hydrochloride sold under the brand name Glumetza directly from Bausch and Lupin, alleging that Assertio, Bausch, and Lupin engaged in a scheme in violation of the federal antitrust laws to unlawfully delay entry of

---

[1] The Direct Purchaser Class does not include those entities that opted out of the class by the Court's deadline: Albertsons Companies, Inc., Albertsons LLC, CVS Pharmacy, Inc., H-E-B L.P., Humana Pharmacy, Inc, Hy-Vee, Inc., The Kroger Co., Rite Aid Corporation, Rite Aid Hdqtrs. Corp., R&S Northeast LLC, and Walgreen Co.

[2] Subsequent actions were filed and, later, consolidated into this first-filed case: Nos. 3:19-cv-06138-WHA, 3:19-cv-06839-WHA, 5:19-cv-07843-NC, 3:19-cv-08155-WHA, 3:20-cv-01198-WHA, and 3:20-cv-05251-WHA.

generic substitutes for brand Glumetza imposing antitrust overcharges on members of the Direct Purchaser Class ("Class Members");

WHEREAS, on March 5, 2020, the Court issued an order denying the defendants' motion to dismiss the complaints filed on behalf of the Direct Purchaser Class, *see In re Glumetza Antitrust Litig.*, No. 3:19-cv-05822-WHA, 2020 WL 1066934 (N.D. Cal. Mar. 5, 2020);

WHEREAS, on August 15, 2020, the Court issued an order on Plaintiffs' motion for class certification pursuant to Federal Rule of Civil Procedure 23 certifying the Direct Purchaser Class, as defined below, *see In re Glumetza Antitrust Litig.*, 336 F.R.D. 468 (N.D. Cal. 2020);

WHEREAS, on November 6, 2020, the claims administrator for the Direct Purchaser Class sent notice to the Class Members advising them of the Court's class certification order and providing a procedure for opting out of the class, and only the following entities opted out of the class: Albertsons Companies, Inc., Albertsons LLC, CVS Pharmacy, Inc., H-E-B L.P., Humana Pharmacy, Inc., Hy-Vee, Inc., The Kroger Co., Rite Aid Corporation, Rite Aid Hdqtrs. Corp., R&S Northeast LLC, and Walgreen Co.;

WHEREAS, on January 5, 2021, Lupin and Lead Class Counsel participated in a mediation with and through Magistrate Judge Donna M. Ryu but did not reach any resolution;

WHEREAS, on May 6, 2021, the Court issued an order on cross-motions for summary judgment, *see In re Glumetza Antitrust Litig.*, No. 3:19-cv-05822-WHA, 2021 WL 1817092 (N.D. Cal. May 6, 2021);

WHEREAS, on August 25, 2021, the Court issued an order on the parties' Daubert motions, *see In re Glumetza Antitrust Litig.*, No. 19-cv-05822, 2021 WL 3773621 (N.D. Cal Aug. 25, 2021);

WHEREAS, on September 8-9, 2021, the Court held the final pretrial conference and issued rulings on the parties' motions in *limine*;

WHEREAS, on September 14, 2021, Lupin and Lead Class Counsel participated in a mediation with and through Magistrate Judge Ryu;

WHEREAS, Lupin denies each and every one of the allegations asserted in the current pending and prior complaints on behalf of the Direct Purchaser Class, has not conceded or admitted any liability, and has asserted a number of defenses to the claims of the Direct Purchaser Class;

WHEREAS, Plaintiffs and Lupin agree that neither this Settlement Agreement nor the settlement it embodies (the "Settlement") nor any actions taken in furtherance of either the Settlement Agreement or the Settlement shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Lupin or of the truth of Plaintiffs' claims or allegations or a waiver of any defenses thereto;

WHEREAS, Plaintiffs and Lupin agree that neither the Settlement nor any actions taken in furtherance of either the Settlement Agreement or the Settlement shall be deemed or construed to be an admission or evidence of any lack of merit in or of the absence of the truth of Plaintiffs' claims or allegations;

WHEREAS, after substantial factual and expert discovery, including the claims asserted in Plaintiffs' complaints in this Action and the legal and factual defenses thereto asserted by Lupin, Lead Class Counsel, along with additional counsel for Plaintiffs and the Direct Purchaser Class ("Class Counsel"), believe that it would be in the best interests of the Direct Purchaser Class to enter into this Settlement Agreement with Lupin to avoid the uncertainties of litigation against Lupin and assure a benefit to the Direct Purchaser Class;

WHEREAS, Lead Class Counsel, on behalf of Plaintiffs and the Direct Purchaser Class, and counsel for Lupin, all of whom are highly experienced in pharmaceutical antitrust litigation and settlement, engaged in arm's-length settlement negotiations and have reached this Settlement Agreement with the assistance and upon the recommendation of Magistrate Judge Ryu, subject to Court approval, which embodies all of the terms and conditions of the Settlement between Plaintiffs, both individually and on behalf of the Direct Purchaser Class, and Lupin;

WHEREAS, Class Counsel have concluded that the Settlement is fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23 and is in the best interests of the Direct Purchaser Class;

WHEREAS, Lupin has concluded, despite its belief that it is not liable for the claims asserted and that it has good defenses thereto, that it would be in its best interests to enter into this Settlement Agreement solely to avoid the uncertainties and additional costs of further litigation and to put to rest all claims asserted on behalf of the Direct Purchaser Class in this Action; and

WHEREAS, the Settlement resolves claims against Lupin only, and does not resolve, compromise, discharge, or settle any of the claims of Plaintiffs or the Direct Purchaser Class against Bausch or Assertio;

NOW THEREFORE, in consideration of the foregoing and the representations, warranties, and covenants contained herein, and intending to be legally bound hereby, it is agreed by the undersigned, on behalf of Plaintiffs and the Direct Purchaser Class and Lupin that this Action and all claims of Plaintiffs and the Direct Purchaser Class be fully, finally, and forever settled, compromised, discharged, and dismissed with prejudice as to Lupin, with each party bearing its own costs, subject to the approval of the Court, on the following terms and conditions:

1.     **Direct Purchaser Class.** The Court has previously certified the following Direct Purchaser Class, which Lupin shall not challenge for purposes of this Settlement:

> All persons or entities in the United States and its territories who directly purchased Glumetza or generic Glumetza from a defendant from May 6, 2012 until the date of this order [August 15, 2020].

2.     **Reasonable Best Efforts to Effectuate This Settlement.** Plaintiffs, Lead Class Counsel, and Lupin agree to recommend approval of this Settlement to the Court and to undertake their best efforts, including all steps and efforts contemplated by this Settlement Agreement and any other steps and efforts that may be necessary or appropriate, to carry out the terms of this Settlement Agreement and to secure the prompt, complete, and final dismissal with prejudice of

claims in this Action against Lupin. This includes Lupin's serving notice of this Settlement on the appropriate federal and state officials under the Class Action Fairness Act, 28 U.S.C. § 1715.

**3.** **Motion for Preliminary Approval of the Settlement.** As soon as possible and in no event later than 20 business days after the date of execution of this Settlement Agreement, Plaintiffs and the Direct Purchaser Class shall submit to the Court, and Lupin shall support, a motion seeking entry of an order preliminarily approving the Settlement substantially in the form of **Exhibit A** hereto (the "Preliminary Approval Order"):

a. Preliminarily approving the Settlement set forth in this Settlement Agreement as fair, reasonable, and adequate and in the best interests of the Direct Purchaser Class, pursuant to Federal Rule of Civil Procedure 23;

b. Staying all proceedings in this Action on behalf of Plaintiffs and the Direct Purchaser Class against Lupin only, except those proceedings provided for or required by this Settlement Agreement;

c. Approving the form and manner of notice, which provides for dissemination of notice, substantially in the form of **Exhibit B** hereto, by U.S. mail and, where possible, email to all Class Members;

d. Appointing a settlement administrator and escrow agent; and

e. Setting a final settlement schedule and date for a final approval hearing by the Court to approve the Settlement, proposed allocation plan, and Class Counsel's application for an award of attorneys' fees and reimbursement of expenses after the notice period has expired.

**4.** **Motion for Final Approval and Entry of Final Judgment.** If the Court preliminarily approves this Settlement, Plaintiffs and the Direct Purchaser Class shall submit, and Lupin shall support, a motion for final approval of this Settlement by the Court (the "Final

Approval Motion"), after notice has been disseminated to the Direct Purchaser Class pursuant to the Preliminary Approval Order. The Final Approval Motion shall seek entry of an order and final judgment ("Final Approval Order") substantially in the form of **Exhibit C** hereto:

    a.    Finding this Settlement Agreement and its terms to be a fair, reasonable, and adequate settlement as to Plaintiffs and the Direct Purchaser Class within the meaning of Federal Rule of Civil Procedure 23 and directing its consummation pursuant to its terms;

    b.    Finding that the notice given constitutes due, adequate, and sufficient notice and meets the requirements of due process and the Federal Rules of Civil Procedure;

    c.    Finding that the proposed allocation plan, which allocates the Settlement Fund (net of Court-approved attorneys' fees, expenses, and settlement administration costs) *pro rata* based on the units of brand and/or generic Glumetza purchased during the relevant period (net of returns) by each member of the Direct Purchaser Class is fair and efficient;

    d.    Finding that all Class Members shall be bound by this Settlement Agreement, including the release provisions and covenant not to sue set forth in this Settlement Agreement;

    e.    Incorporating the releases set forth in Paragraphs 8 and 9, below, and forever barring the Releasors from asserting any Released Claims against any of the Lupin Releasees as defined below;

    f.    Granting an award of reasonable attorneys' fees and reimbursement of expenses solely from the Settlement Fund;

    g.    Retaining exclusive jurisdiction over the Settlement and this Settlement Agreement, including the administration and consummation of this Settlement;

    h.    Directing that all claims by and on behalf of Plaintiffs and the Direct Purchaser Class be dismissed with prejudice as to Lupin only and, except as provided for

herein, with prejudice and without costs or attorneys' fees recoverable under 15 U.S.C. § 15(a); and

       i.      Determining, pursuant to Federal Rule of Civil Procedure 54(b), that there is no just reason for delay and directing that all of the Direct Purchaser Class claims in this Action as to Lupin only shall be final and immediately appealable.

     **5.**    **Finality of Settlement.** This Settlement Agreement and the Settlement shall become final upon the occurrence of all of the following (the "Effective Date"):

       a.      The Settlement and this Settlement Agreement are approved by the Court as required by Federal Rule of Civil Procedure 23(e);

       b.      The Court enters an order finally approving the Settlement substantially in the form attached hereto as the Final Approval Order, entering a final judgment of dismissal with prejudice as to Lupin only against Plaintiffs and the Direct Purchaser Class;

       c.      The time for appeal from the Court's signing of the Final Approval Order has expired or, if the Final Approval Order is appealed, it has been resolved by agreement and withdrawn by the appealing party, or it has been affirmed by the court of last resort to which an appeal of such Final Approval Order may be taken and such affirmance has become no longer subject to further appeal or review; and

       d.      The Settlement is not terminated pursuant to Paragraph 13, below.

     **6.**    **Settlement Payment.**

       a.      The total "Settlement Payment" is one hundred fifty million dollars ($150,000,000 USD). The Settlement Payment will be made by Lupin Ltd. as follows: within thirty (30) business days following entry of the Preliminary Approval Order of the Settlement without material change and upon receipt from Class Counsel of wiring instructions on the recipient's letterhead that include the bank name and ABA routing

number, account name, and account number, and a signed Form W-9 reflecting a valid taxpayer identification number for the qualified settlement account in which the funds are to be deposited (the "Settlement Fund"), Lupin Ltd. shall pay seventy-five million dollars ($75,000,000) to the Settlement Fund (the "First Payment"); thirty (30) business days following the First Payment, Lupin Ltd. shall make an additional payment of seventy-five million dollars ($75,000,000) to the Settlement Fund (the "Second Payment"). The Settlement Fund shall be held in escrow (the "Escrow Account"), subject to the terms and conditions of an escrow agreement in the form of **Exhibit D** hereto (the "Escrow Agreement") and in accordance with the provisions of Paragraph 7 below, pending finality of this Settlement Agreement pursuant to Paragraph 5 above. The total consideration that Lupin Ltd. will pay for this Settlement shall be the Settlement Payment only. No portion of the Settlement Payment shall constitute, or shall be construed as constituting, a payment in lieu of treble damages, fines, penalties, punitive damages or forfeitures. The Settlement Payment shall be made directly by Lupin Ltd. to the Escrow Account. Should Lupin Ltd. fail to make the Settlement Payment as outlined, Lupin Pharmaceuticals, Inc. shall be required to make the Settlement Payment.

      b.      It is the intention of the parties to this Settlement Agreement that the recovery by the Direct Purchaser Class, in proportion to units purchased during the period May 2012 to November 2019, be at least as favorable, if not more favorable, on a pro rata basis than any settlement by either (a) the Retailer Plaintiffs[3] or (b) Humana.[4] To effectuate that intention, this Settlement Agreement provides for a most favored nations ("MFN")

---

[3] The term "Retailer Plaintiffs" refers to Albertson Companies, Inc., Albertsons LLC, CVS Pharmacy, Inc., H-E-B L.P., Hy-Vee, Inc., The Kroger Co., Rite Aid Corporation, Rite Aid Hdqtrs. Corp., and Walgreen Co.

[4] The term "Humana" refers to Humana Pharmacy, Inc. and Humana Inc.

provision that will apply to any other pre-verdict settlement of this Action reached by Lupin with the Retailer Plaintiffs or Humana. The MFN does not apply to (a) a verdict in this Action, (b) a settlement in this Action reached after verdict, or (c) a settlement of any case other than this Action, including but not limited to a settlement of *Humana Inc. v. Bausch Health Companies Inc., et al.*, Alameda Superior Court, Case No. HG21087971. For purposes of this MFN, the parties agree and will not contest that the Direct Purchaser Class, Retailer Plaintiffs, and Humana purchased the following number of units of branded and generic Glumetza during the period from May 2012 to November 2019:

| Plaintiff | Units Purchased |
|---|---|
| Direct Purchaser Class (Excluding Retailer Plaintiffs and Humana) | 73,810,441,704 mg |
| Retailer Plaintiffs | 61,660,682,749 mg |
| Humana | 113,940,000 mg |

In the event (a) the amount of Lupin's settlement with the Retailer Plaintiffs in proportion to units purchased by the Retailer Plaintiffs exceeds the Settlement Payment in proportion to units purchased by the Direct Purchaser Class, or (b) the amount of a future settlement subject to this MFN between Lupin and Humana in proportion to units purchased by Humana exceeds the Settlement Payment in proportion to units purchased by the Direct Purchaser Class, Lupin Ltd. agrees to make an additional payment ("Supplemental Payment") to increase the total amount of Lupin's settlement with the Direct Purchaser Class to an amount sufficient that the Direct Purchaser Class's recovery in proportion to units purchased by the Direct Purchaser Class is no longer exceeded by the amount of another settlement in proportion to units purchased by the other settling party. As an example, if Lupin settled with Humana for $600,000 in a settlement subject to this MFN,

the Direct Purchaser Class would be entitled to a Supplemental Payment calculated as follows: $((\$600,000 \div 113,940,000) \times 73,810,441,704) - \$150,000,000 = \$238,680,578.00$. Said Supplemental Payment will be made to the Settlement Fund within fourteen (14) days of the effective date of the other settlement. Any dispute regarding the MFN shall be governed by Paragraphs 22–23 of this Settlement Agreement. Lupin will advise the Court and Class Counsel if a Supplemental Payment is due as a result of (a) its settlement with the Retailer Plaintiffs within five (5) business days of preliminary approval of this Settlement Agreement, and (b) a settlement, if any, with Humana within five (5) business days of the effective date of that agreement. For the avoidance of doubt, a settlement payment to the Retailer Plaintiffs equal to or less than $\$125,308,861.44$, or a settlement payment to Humana equal to or less than $\$231,552.60$ will not trigger a Supplemental Payment. Notwithstanding the foregoing, DPPs agree that the Court shall have full authority to grant exceptions to this MFN provision, thus eliminating the need for a Supplemental Payment, if the Court finds that doing so is appropriate under the facts and circumstances.

**7.    The Settlement Fund.**

a.        Before the Court issues the Final Approval Order, disbursements for expenses associated with providing notice of the Settlement to the Class and administering the Settlement and any payments and expenses incurred in connection with taxation matters relating to the Settlement and this Settlement Agreement (collectively, "Administration Expenses") may be made from the Settlement Fund. In the event the Agreement is disapproved, terminated, or otherwise fails to become effective, the Settlement Fund shall be refunded to Lupin plus interest earned (net of any taxes paid on such interest), minus half the actual costs of notice and claims administration. Court approval shall not be required for disbursements or distributions of Administration Expenses for amounts (in the

aggregate) of less than twenty five thousand dollars ($25,000). Otherwise, no disbursement from or distribution of the Settlement Fund shall be made without prior approval of the Court.

b.      At all times prior to the Effective Date, the Settlement Fund shall be invested as set forth in the Escrow Agreement, in instruments backed by the full faith and credit of the United States government or fully insured by the United States government or an agency thereof, including a U.S. Treasury Money Market Fund or a bank account insured by the Federal Deposit Insurance Corporation ("FDIC") up to the guaranteed FDIC limit. After the Effective Date, the Settlement Fund shall be invested as directed in writing by Lead Class Counsel. All interest and dividends earned on the Settlement Fund shall become and remain part of the Settlement Fund. Lupin shall have no liability, obligation, or responsibility of any kind in connection with the investment, disbursement, or other oversight of the Settlement Fund.

c.      After the Effective Date, the Settlement Fund shall be distributed in accordance with the Court-approved plan for such distribution. Lupin shall have no responsibility whatsoever for the allocation or distribution of the Settlement Fund and shall not be responsible for disputes relating to the amount, allocation, or distribution of any fees or expenses. Further, after making the Settlement Payment, Lupin shall not be liable for any additional payments to the Plaintiffs, Class Counsel, or the Direct Purchaser Class pursuant to this Settlement Agreement.

d.      Lupin shall have no right of reimbursement or repayment from the Settlement Fund except as set forth in Paragraphs 7(a) and 13.

e.      Plaintiffs and Class Counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses. Lupin shall not be liable for any costs, attorneys' fees,

other fees, or expenses of any of Plaintiffs' or the Direct Purchaser Class's respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the Court shall be paid out of the Settlement Fund.

      f.    To the extent that there is any ambiguity or inconsistency concerning disbursements when this Settlement Agreement and the Escrow Agreement are read together, the terms of this Settlement Agreement shall control.

      **8.**    **Releases.** In consideration for the Settlement Payment, upon the occurrence of the Effective Date, Plaintiffs and all Direct Purchaser Class members who receive notice pursuant to this Settlement Agreement, whether or not they choose to make a claim upon or participate in the Settlement Fund (on behalf of themselves and their respective past, present, and future parents, subsidiaries, divisions, affiliates, joint ventures, stockholders, and general or limited partners, as well as their past, present, and future respective officers, directors, employees, trustees, insurers, agents, associates, attorneys, and any other representatives thereof, and predecessors, heirs, executors, administrators, successors, and assigns of each of the foregoing), on their own behalf and as assignee or representative of any other entity (the "Plaintiff Releasors"), will dismiss Lupin (and its past, present, and future parents, subsidiaries, divisions, affiliates, joint ventures, stockholders, and general or limited partners, as well as their past, present, and future respective officers, directors, employees, trustees, insurers, agents, associates, attorneys, and any other representatives thereof, and the predecessors, heirs, executors, administrators, successors, and assigns of each of the foregoing) (the "Lupin Releasees") from this Action with prejudice, and release the Lupin Releasees from all claims, rights, debts, obligations, demands, actions, suits, causes of action, liabilities, including costs, expenses, penalties, and attorneys' fees, or damages (known or unknown), whenever incurred, that were brought against Lupin in this litigation relating to claims under Sections 1 and 2 of the Sherman Antitrust Act (15 U.S.C. §§ 1–2) (including claims based on state

antitrust or unjust enrichment laws that are based on substantially the same antitrust theory of liability as asserted in this Action) arising from or relating to the purchase of Glumetza or generic Glumetza from Bausch, Assertio, or Lupin from May 6, 2012 until August 15, 2020 (collectively, this entire Paragraph, the "Released Claims"). For the avoidance of doubt, the scope of Released Claims will be interpreted to be no broader than that required by ¶ 4 of the Court's November 4, 2019 Notice and Order on Putative Class Actions and Factors to Be Evaluated for Any Proposed Settlement (ECF No. 39) ("The proposed release should be limited only to the claims certified for class treatment. Language releasing claims that 'could have been brought' is too vague and overbroad. The specific statutory or common law claims to be released should be spelled out . . . ."). Plaintiffs and the Direct Purchaser Class hereby covenant and agree that, after the Effective Date, each shall not sue or otherwise seek to establish or impose liability against the Lupin Releasees based, in whole or in part, on any of the Released Claims. The Plaintiff Releasors are releasing claims (upon final Court approval) only against the Lupin Releasees.

9. **California Civil Code § 1542.** Each of the Plaintiff Releasors expressly waives all rights under California Civil Code § 1542 with respect to the Released Claims to the extent, if any, it would otherwise apply to the Released Claims which provides:

> Section 1542. General Release; extent. A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

10. **Reservation of Claims.** The Plaintiffs and the Direct Purchaser Class and Lupin intend that the releases herein apply only to those claims within the scope of the certified class claim. Thus, notwithstanding the foregoing, Released Claims shall not include any claims arising in the ordinary course of business between Plaintiffs and/or member(s) of the Direct Purchaser Class and the Released Parties concerning Article 2 of the Uniform Commercial Code (pertaining to

-13-

sales), the laws of negligence, product liability or implied warranty, breach of warranty, breach of contract (other than breach of contract based in whole or in part on any of the Released Claims), or personal or bodily injury. No party other than the Lupin Releasees is intended to be, or is, included within the scope of the release contained herein. For the avoidance of doubt: (a) neither Bausch nor its past or future parent(s) or successor(s) in interest is intended to be, or is, included within the scope of this release; and (b) neither Assertio nor their past or future parent(s) or successor(s) in interest is intended to be, or is, included within the scope of this release. This Settlement is as to Lupin only and is not intended to release any claims other than those specified herein.

11.    **Full Satisfaction; Limitation of Interest and Liability.** Class Members shall look solely to the Settlement Fund for settlement and satisfaction against Lupin of all claims that are released hereunder. Except as provided by order of the Court, no member of the Direct Purchaser Class shall have any interest in the Settlement Fund or any portion thereof. Plaintiffs and Class Counsel or any other counsel acting on Plaintiffs' behalf will be paid solely out of the Settlement Fund for any costs and expenses relating to this Action.

12.    **Attorneys' Fees and Costs.**

a.    Class Counsel shall file a motion for approval of the Fee and Expense Award ("Motion for Fee and Expense Award") after the Court has granted preliminary approval of the Settlement but sufficiently before the Court's final approval hearing on the Settlement. Class Counsel shall be paid solely out of the Settlement Fund for all such fees and expenses. Plaintiffs, Class Members, and their respective counsel shall not seek payment of any attorneys' fees or costs from Lupin in this Action, or in any other action related to the released claims set forth above, from any source other than the Settlement Fund, and will not seek that payment prior to the Effective Date and only after the total Settlement Payment has been made.

b.      The procedures for and the allowance or disallowance by the Court of the Motion for Fee and Expense Award to be paid out of the Settlement Fund are not part of this Agreement and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. Any order or proceeding relating to the fee and expense application, or any appeal from any such order, shall not operate to terminate or cancel this Agreement or provide a basis to terminate or cancel this Agreement, affect or delay the finality of the judgment approving settlement, or affect or delay the payment of the Settlement Payment.

**13.     Termination.** Lupin and Plaintiffs shall each have the option to terminate the Settlement and have the Settlement Payment refunded to Lupin if the Court declines to grant final approval to the Settlement. Lupin shall have the option to terminate the Settlement and have the Settlement Payment refunded to Lupin if a mutually agreed percentage of the proposed Direct Purchaser Class opts out of the Settlement, as described in Paragraph 14. If for any reason the Settlement does not become final in accordance with the terms of this Settlement Agreement, then (i) this Settlement Agreement shall be of no force or effect; (ii) all funds paid by Lupin into the Settlement Fund, plus interest (net of any taxes paid on such interest), minus half the actual costs of notice and claims administration, shall be returned to Lupin as soon as practicable after the Escrow Agent receives notice of termination; (iii) any release pursuant to Paragraphs 8 and 9 above shall be of no force or effect; and (iv) the litigation of this Action will resume in a reasonable manner and on a reasonable timetable to be approved by the Court.

**14.     Opt-Outs.**

a.      Class Members were previously afforded the opportunity to opt out of the Direct Purchaser Class. The parties agree that there is no need for an additional opt-out period and shall each oppose any effort to impose an additional opportunity to opt out of

this Settlement. Should the Court order an additional opt-out period, then, within 10 calendar days after the Court-ordered deadline by which Class Members may opt out, Lead Class Counsel shall serve on counsel for Lupin a list of all opt outs that timely submitted notices of intent to opt out.

b.      Lupin shall have the option to terminate this Agreement if the Opt-Out Percentage exceeds a percentage set forth in a confidential supplemental agreement to be filed *in camera*, the form of which is attached hereto as **Exhibit E**.

c.      Any disputes regarding the application of any aspect of this Paragraph 14, including the calculation of the Opt-Out Percentage, shall be resolved by the Court, with Plaintiffs, Lupin, and the opt-outs all having the opportunity to be heard.

**15.   Taxes Paid by Settlement Fund.**

a.      The parties intend that any taxes due as a result of income earned by the Settlement Fund will be paid from the Settlement Fund. Lead Class Counsel shall be solely responsible for directing the Court-approved settlement administrator ("Settlement Administrator") to file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Settlement Fund. Further, Lead Class Counsel shall be solely responsible for directing the Settlement Administrator to make any tax payments, including interest and penalties, for income earned by the Settlement Fund. Lead Class Counsel shall be entitled to direct the Escrow Agent to pay from the Escrow Account customary and reasonable tax expenses, including professional fees and expenses incurred in connection with carrying out the Escrow Agent's or tax preparer's responsibilities. Lupin shall have no responsibility to make any tax filings related to the Settlement, this Settlement Agreement, or the Settlement Fund and shall have no responsibility to pay taxes on any income earned by the Settlement Fund or to pay taxes

with respect thereto unless the settlement is not consummated and the Settlement Fund or the net settlement fund (minus half the actual costs of notice and claims administration) is returned to Lupin. Other than as specifically set forth herein, Lupin shall have no responsibility for the payment of taxes or tax-related expenses. If, for any reason, for any period of time, Lupin is required to pay taxes on income earned by the Settlement Fund, the Escrow Agent shall, upon written instructions from Lupin with notice to Lead Class Counsel, timely pay to Lupin sufficient monies from the Settlement Fund to enable it to pay all taxes (state, federal, or other) on income earned by the Settlement Fund.

b.      For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Escrow Account shall be the Settlement Administrator, who shall timely and properly file or cause to be filed on a timely basis, all tax returns necessary or advisable with respect to the Escrow Account (including without limitation all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B 2(1)).

c.      The parties to this Settlement Agreement and their counsel shall treat, and shall cause the Escrow Agent to treat, the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B 1. The parties, their counsel, and the Escrow Agent agree that they will not ask the Court to take any action inconsistent with the treatment of the Escrow Account in this manner. In addition, the Escrow Agent and, as required, the parties shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B l(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the

necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur. All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Escrow Account being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B.

16.     **Binding Effect.** This Settlement Agreement shall be binding upon, and inure to the benefit of, the parties hereto and to the Lupin Releasees. Without limiting the generality of the foregoing, each and every covenant and agreement herein by the Plaintiffs and Lead Class Counsel shall be binding upon all Class Members.

17.     **Integrated Agreement.** This Settlement Agreement, together with exhibits hereto and the documents incorporated herein by reference, contains an entire, complete, and integrated statement of each and every term and provision agreed to by and among the parties hereto with respect to the transactions contemplated by this Agreement, and supersedes all prior agreements or understandings, whether written or oral, between or among any of the parties hereto with respect to the subject matter hereof. This Settlement Agreement shall not be modified in any respect except by a writing executed by all of the signatories hereto.

18.     **Independent Settlement.** This Settlement is not conditioned on approval by any other member of the Direct Purchaser Class or settlement of any other case.

19.     **Headings.** The headings used in this Settlement Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

20.     **No Party is the Drafter.** None of the parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

21.   **Intended Beneficiaries.** No provision of this Settlement Agreement will provide any rights to, or be enforceable by, any person or entity that is not Plaintiffs, Class Counsel, a member of the Direct Purchaser Class, or Lupin. Neither Bausch nor Assertio shall have any rights under this Settlement Agreement, nor can they enforce its terms. Neither Plaintiffs nor Class Counsel may assign or otherwise convey any right to enforce or dispute any provision of this Settlement Agreement.

22.   **Choice of Law.** All terms of this Settlement Agreement shall be governed by and interpreted according to federal common law or, where state substantive law must apply, California law, without regard to any otherwise applicable choice-of-law principle

23.   **Consent to Jurisdiction.** Lupin and each Direct Purchaser Class member hereby irrevocably submit to the exclusive jurisdiction of the United States District Court for the Northern District of California for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein. Nothing in this Paragraph shall prohibit (a) the assertion in any forum in which a claim is brought that any release herein is a defense, in whole or in part, to such claim or (b) in the event that such a defense is asserted in such forum, the determination of its merits in that forum.

24.   **Representations and Warranties.** The signatories hereto represent and warrant that they each have the requisite authority (or in the case of natural persons, the legal capacity) to execute, deliver, and perform this Settlement Agreement and to consummate the transactions contemplated hereby.

25.   **Stay of Proceedings.** Pending Court approval of the Settlement embodied in this Settlement Agreement, Plaintiffs agree to support any motion by Lupin to stay any and all

proceedings against Lupin in the Action other than those incident to the settlement process and to grant extensions of time with respect to any court filings necessary to effectuate such stays.

26.  **No Admission.** Nothing in this Settlement Agreement, nor any proceedings undertaken in accordance with the terms set forth in the Settlement Agreement, shall be construed as an admission or concession in any action or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body, or any other body or authority, present or future: (a) by Lupin, including, without limitation, that Lupin engaged in any conduct or practices that violate any antitrust statute or other law; or (b) by Plaintiffs, including, without limitation, that any allegation made by them in the Action is without merit.

27.  **Notice.** Notice to Lupin pursuant to this Settlement Agreement shall be sent by United States mail and electronic mail to:

> Jay P. Lefkowitz
> KIRKLAND & ELLIS LLP
> 601 Lexington Avenue
> New York, NY 10022
> Telephone: 212-446-4970
> Email: lefkowitz@kirkland.com
>
> Devora W. Allon
> KIRKLAND & ELLIS LLP
> 601 Lexington Avenue
> New York, NY 10022
> Telephone: 212-446-5967
> Email: devora.allon@kirkland.com

Notice to the Plaintiffs or Class Counsel pursuant to this Settlement Agreement shall be sent by United States mail and electronic mail to Lead Class Counsel:

> Lauren G. Barnes
> HAGENS BERMAN SOBOL SHAPIRO LLP
> 55 Cambridge Parkway, Suite 301
> Cambridge, MA 02142
> Telephone: 617-482-3700
> Email: lauren@hbsslaw.com

Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Email: shanas@hbsslaw.com

Joseph M. Vanek
SPERLING & SLATER, PC
55 W. Monroe, Suite 3200
Chicago, IL 60603
Telephone: 312-224-1502
Email: jvanek@sperling-law.com

Steve Shadowen
HILLIARD & SHADOWEN LLP
1135 W. 6th St #125
Austin, TX 78703
Telephone: (855) 344-3298
Email: steve@hilliardshadowenlaw.com

28.    **Execution in Counterparts**. This Settlement Agreement may be executed in counterparts. Signatures transmitted by electronic means shall be considered valid signatures as of the date signed.

IN WITNESS WHEREOF, the parties hereto through their fully authorized representatives have agreed to this Settlement Agreement as of the date first herein above written.

Dated:  _09/20/2021_                **DIRECT PURCHASER PLAINTIFFS**

**By:**

_____
Lauren G. Barnes
HAGENS BERMAN SOBOL SHAPIRO LLP

_____
Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO LLP

-21-
SETTLEMENT AGREEMENT BETWEEN DIRECT PURCHASER CLASS AND LUPIN
No. 3:19-cv-05822-WHA

Steve D. Shadowen
HILLIARD & SHADOWEN LLP

Joseph M. Vanek
SPERLING & SLATER, P.C.

*Co-Lead Counsel for Direct Purchaser Class*

**LUPIN PHARMACEUTICALS, INC. and
LUPIN LTD.**

**By:**

Jay P. Lefkowitz
KIRKLAND & ELLIS LLP

Devora W. Allon
KIRKLAND & ELLIS LLP

SETTLEMENT AGREEMENT BETWEEN DIRECT PURCHASER CLASS AND LUPIN
No. 3:19-cv-05822-WHA

# EXHIBITS A-E OMITTED