Steven H. Winick (SBN 160815)
BUCHALTER
A Professional Corporation
55 Second Street, Suite 1700
San Francisco, CA 94105-3493
Telephone:   (415) 227-0900
Fax:         (415) 227-0770
Email:       swinick@buchalter.com

Attorneys for Objector and Absent Class Member
MCKESSON CORPORATION

Additional counsel on signature page

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| *IN RE GLUMETZA ANTITRUST LITIGATION*<br><br>This Document Relates To:<br><br>All Actions | Case No.: 3:19-cv-05822-WHA<br><br>**OBJECTION TO CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES BY ABSENT CLASS MEMBERS MCKESSON CORPORATION, CARDINAL HEALTH, INC., AND AMERISOURCEBERGEN DRUG CORPORATION**<br><br>**NOTICE OF INTENT TO APPEAR**<br><br>Date:   January 20, 2022<br>Time:   TBD<br>Court:  The Honorable William Alsup<br>        Courtroom 12, 19th Floor |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. DISCUSSION ...................................................................................................................... 4

    A. The 25% Benchmark Should Not Be Applied in this Megafund Case and Would Result in a Windfall to Class Counsel. ................................................................ 4

    B. The Size of the Settlement Was Largely Due to the Egregious Price Hikes of Defendant Bausch Health. ..................................................................................... 6

    C. Class Counsel Nullified Their Risk By Settling the Case. ................................... 7

    D. The Lodestar Cross-Check Demonstrates that a Fee Award of 25% Resulting in a Multiplier of Five Is Not Reasonable or Appropriate……………………………..8

III. CONCLUSION .................................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alexander v. FedEx Ground Package Sys., Inc.*,
No. 05-cv-00038, 2016 U.S. Dist. LEXIS 78087 (N.D. Cal. June 15, 2016) .......................... 5

*In re Apple Inc. Device Performance Litig.*,
No. 5:18-md-02827-EJD, 2021 U.S. Dist. LEXIS 50546 (N.D. Cal. Mar. 17, 2021) .............................................................................................................................. 10

*In re Bristol-Myers Squibb Securities Litigation*,
361 F. Supp. 2d 229 (S.D.N.Y. 2005) ................................................................................... 6

*In re Citigroup Inc. Bond Litigation*,
988 F. Supp. 2d 371 (S.D.N.Y. 2013) ................................................................................... 5

*Etter v. Allstate Ins. Co.*,
No. C 17-00184 WHA, 2018 U.S. Dist. LEXIS 189136 (N.D. Cal. Nov. 4, 2018) (Alsup, J.) ............................................................................................................... 10

*Gutierrez v. Wells Fargo Bank, N.A.*,
No. C 07-05923 WHA, 2015 U.S. Dist. LEXIS 67298 (N.D. Cal. May 21, 2015) (Alsup, J.) ........................................................................................................ *passim*

*In re High-Tech Employee Antitrust Litig.*,
No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 118052 (N.D. Cal. Sep. 2, 2015) ...................................................................................................................................... 5

*In re Infospace, Inc.*,
330 F. Supp. 2d 1203 (W.D. Wash. 2004) (Judge Thomas Samuel Zilly) .............................. 6

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*,
654 F.3d 935 (9th Cir. 2011) ................................................................................................ 2

*In re LDK Solar Securities Litigation*,
No. C 07-5182, 2010 U.S. Dist. LEXIS 87168 (N.D. Cal. July 29, 2010) ............................. 5

*In re Loestrin 24 Fe Antitrust Litig.*,
No. 1:13-md-2472-WES-PAS, 2020 U.S. Dist. LEXIS 125745 (D.R.I. July 17, 2020) ...................................................................................................................................... 8

*In re Mercury Interactive Corp. Sec. Litig.*,
618 F.3d 988 (9th Cir. 2010) ................................................................................................ 4

*In re MGM Grand Hotel Fire Litigation*,
660 F. Supp. 522 (D. Nev. 1987) .......................................................................................... 6

*Morales v. City of San Rafael*, 66 F.3d 359, 363 (9th Cir. 1996)..............................................1

*In re Namenda Direct Purchaser Antitrust Litig.*,
   No. 1:15-cv-07488, 2020 U.S. Dist. LEXIS 104028 (S.D.N.Y. June 15, 2020)
   (McMahon, J.).......................................................................................................... passim

*In re NASDAQ Market-Makers Antitrust Litigation*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................................... 6

*In re Neurontin Mktg. & Sales Practices Litig.*,
   58 F. Supp. 3d 167 (D. Mass. 2014) ............................................................................ 10

*In re Optical Disk Drive Products Antitrust Litig.*,
   959 F.3d 922 (9th Cir. 2020 ................................................................................... passim

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989).......................................................................................... 4

*Perez v. Rash Curtis & Assoc.*,
   No. 4:16-cv-03396-YGR, 2021 U.S. Dist. LEXIS 189889 (N.D. Cal. Oct. 1,
   2021) ............................................................................................................................ 11

*In re Petrobras Securities Litig.*,
   317 F. Supp. 3d 858 (S.D.N.Y. 2018)............................................................................ 9

*Ridgway v.Walmart Stores*,
   269 F. Supp. 3d 975 (N.D. Cal. 2017) (Illston, J.) ....................................................... 11

*Steiner v. Am. Broad Co.*,
   248 Fed. Appx. 780 (9th Cir. 2007) ............................................................................. 11

*In re Sutter Health Uninsured Pricing Cases*,
   171 Cal. App. 4th 495, 89 Cal. Rptr. 3d 615 (Cal. Ct. App. 2009).............................. 5

*In re. Washington Public Power Supply Systems Securities Litigation*, 19 F.3d 1291 (9th Cir.
   1994)...............................................................................................................................1

*Vizcaino v. Microsoft*,
   290 F.3d 1043 (9th Cir. 2002)....................................................................................... 4

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   No. 16-MD-02752-LHK, 2020 U.S. Dist. LEXIS 129939 (N.D. Cal. July 22,
   2020) ........................................................................................................................ 5, 10

**Statutes**

15 U.S.C. § 15(a) .................................................................................................................. 6

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

iii
NATIONAL WHOLESALERS' OBJECTION TO CLASS COUNSEL'S MOT. FOR ATTORNEY'S FEES
BN 48816579v1

Direct Purchaser Class members McKesson Corporation, Cardinal Health, Inc., and AmerisourceBergen Drug Corporation (collectively, the "National Wholesalers") hereby object to and oppose class counsel's motion for attorneys' fees ("Attorneys' Fee Motion") (ECF 681). The National Wholesalers also hereby give notice of their intent to appear at the Final Fairness Hearing or any other hearing addressing the Attorneys' Fee Motion.

## I.

## **INTRODUCTION**

The National Wholesalers are the three largest class members in this case. Based on their experience in similar generic delay cases, the National Wholesalers believe they collectively represent over 90% of the subject purchases of the Direct Purchaser Class.

The National Wholesalers do not dispute class counsel are entitled to an appropriate fee for their work. Rather, at issue in this objection is what constitutes a reasonable fee award for this "megafund" settlement.[1] Class counsel seek 25% of the common fund, corresponding to a $112.82 million fee award plus the reimbursement of expenses. Class counsel's fee request equates to a "lodestar multiplier" of essentially five (4.99) and would reward counsel by more than $90 million above their stated "lodestar."[2]

The National Wholesalers object to this proposed fee award because it is too high and would result in an unwarranted and unfair windfall for class counsel at the direct expense of class members who incurred the antitrust injury. There are several factors supporting the National Wholesalers' objection:

First, the 25% benchmark percentage-of-the-fund method suggested by class counsel is "of little assistance" in "megafund" cases. *In re Optical Disk Drive Products Antitrust Litig.* ("*In re Optical Disk Drive*"), 959 F.3d 922, 932 (9th Cir. 2020). Rather, applying the benchmark in

---

[1] A "megafund" is generally defined as a common fund greater than $100 million. *In re Optical Disk Drive Products Antitrust Litig.*, 959 F.3d 922, 932 (9th Cir. 2020).

[2] The "lodestar" is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. *Morales v. City of San Rafael*, 66 F.3d 359, 363 (9th Cir. 1996). A "lodestar multiplier" is a multiplied enhancement of the lodestar. *In re Washington Public Power Supply Systems Securities Litigation*, 19 F.3d 1291, 1306 n. 2 (9th Cir. 1994). A multiplier of five would thus be equivalent to an award of five times the lodestar. Class counsel represent their lodestar is $22,586,167. (ECF 681 at p. 24.)

megafund cases is not appropriate where, as here, it would result in a windfall award to class counsel. *See, e.g., Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2015 U.S. Dist. LEXIS 67298, at *25 (N.D. Cal. May 21, 2015) (Alsup, J.) (relying on *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 942 (9th Cir. 2011)).

Second, the potentially enormous damages recoverable in this case were largely the result of defendant Bausch Health's exorbitant pricing of Glumetza, a point this Court highlighted in its order certifying the class. (ECF 347 at p. 13 ("So too for the 2015 price hikes. We have excellent counsel on both sides in this case, and it will be most engaging to see how counsel argue that the 800 percent price hike served competition.")). Class counsel are not entitled to a windfall fee award as a result of explosive damages where, as here, the damages modeling "has no direct relationship to the efforts of counsel." *In re Optical Disk Drive*, 959 F.3d at 933.

Third, while class counsel took risk in developing and prosecuting this lawsuit, class counsel ultimately nullified this risk by settling the action. This avoidance of risk is typical in generic drug delay antitrust matters. The reality is that the great majority of generic drug delay cases are settled and do not proceed to trial, and, as part of the settlement, class counsel's fees and costs are covered, often above their lodestar.

Fourth, as acknowledged by class counsel, a lodestar cross-check is warranted in the present case. Here, even assuming that class counsel's hours and rates are completely reasonable and not subject to any criticism, class counsel's request for a 4.99 multiplier is unreasonable and substantially larger than multipliers historically approved in generic delay cases, and particularly in megafund cases like this one. The average multiplier for all generic drug delay settlements over the past ten years is approximately 1.50. A multiplier of five would be an outlier and significantly out of step with past cases, without regard to the megafund nature of the present case. (See Exhibit A to the Declaration of Steven Winick, filed herewith, ¶¶ 6-7.)

Historically, the National Wholesalers have not objected to fee requests made by class counsel in generic delay cases. The first (and only other) instance when the National Wholesalers filed an objection to class counsel's requested fees was in March 2020 in connection with the direct purchaser class megafund settlement in *In re Namenda Direct Purchaser Antitrust Litig.*, No. 1:15-

cv-07488, 2020 U.S. Dist. LEXIS 104028 (S.D.N.Y. June 15, 2020) (McMahon, J.). In that case, class counsel sought an attorney fee award of 21% of a $750 million settlement fund, which corresponded to a multiplier of approximately 4.5 times the lodestar.[3]

The arguments raised by class counsel in *Namenda* in support of their fee motion parallel the arguments raised by class counsel here. Like the present case, the settlement recovery was one of the largest ever, the case was aggressively defended, class counsel expended significant time and effort litigating the case, the case was complex, the risk of trying the case was substantial, and the settlement was reached the day before trial was set to begin. *Namenda*, 2020 U.S. Dist. LEXIS 104028, at *6-8, 18, 20-21.

The court, by the Honorable Colleen McMahon, sharply reduced class counsel's requested fees from 21% to 9.3% of the common fund, corresponding to a multiplier of two. While the court acknowledged the settlement was very favorable to the class ("the class has made out very well indeed"),[4] the court rejected class counsel's argument that an "unprecedentedly large settlement warrants a commensurately unprecedentedly large fee award":

> Rather, in my view, the larger the settlement value, the less the need for a multiplier to nudge the plaintiffs' bar to pursue large class actions like this. Where class counsel reaches a settlement for hundreds of millions of dollar, a four-or-five times multiplier strikes me as both unseemly and unnecessary to protect the interests of the class.

*Id.* at *19.

The same logic applies here. A multiplier of five is neither reasonable nor required to incentivize or reward class counsel for prosecuting the present action on a contingency basis. A multiplier of two, for instance, as was approved in *Namenda*, would provide a $22.5 million reward to class counsel above their lodestar.

---

[3]   Class counsel in *Namenda* originally sought 27.5 % of the common fund. They subsequently reduced their request to 21% of the common fund prior to the hearing on the fee motion.

[4]   *Namenda*, 2020 U.S. Dist. LEXIS 104028, at *19.

## II.

## DISCUSSION

When evaluating class counsel's motion for attorneys' fees, this Court must scrutinize whether the request is reasonable. *In re Optical Disk Drive*, 959 F.3d at 929. "This duty exists independent of any objection from a member of the class." *Id.*

A district court has discretion to choose either the percentage-of-the-fund or the lodestar method to calculate fees in common fund cases. *Vizcaino v. Microsoft*, 290 F.3d 1043, 1047 (9th Cir. 2002). "[B]ut their discretion must be exercised to reach a reasonable result." *In re Optical Drive*, 959 F.3d at 929.

"Because the relationship between class counsel and class members turns adversarial at the fee-setting stage, district courts assume a fiduciary role that requires close scrutiny of class counsel's requests for fees and expenses from the common fund." *Id.* "As a fiduciary for the class, the district court must act with a jealous regard to the rights of those who are interested in the fund in determining what a proper fee award is." *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010).

A.  **The 25% Benchmark Should Not Be Applied in this Megafund Case and Would Result in a Windfall to Class Counsel.**

Class counsel seek an attorney fee award of 25% of the common fund using a percentage-of-recovery method. Class counsel contend that 25% is a benchmark in the Ninth Circuit, relying on *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) (settlement at issue was for $4,736,000). Not exactly. With a $453.85 million common fund, the present case is a "megafund" case. *See In re Optical Disk Drive*, 959 F.3d at 932 (finding there is "no question" that a $124.5 million common fund is a "megafund."). The 25% benchmark "is of little assistance" in megafund cases. *Id.* at 933. The reasons for this are many, including that megafund cases do not warrant significantly larger awards of attorney's fees than cases with smaller damages ("it isn't ten times as hard to try a $100 million case as a $10 million case"), economies of scale, and the fact that the increases in recovery in megafund cases often have no direct relationship to the efforts of counsel. *Id.*

Accordingly, for megafund cases, the Ninth Circuit instructs district courts to "'employ the lodestar method' or depart downward if rote application of the 25% benchmark 'would yield windfall profits for class counsel in light of the hours spent on the case.'" *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 U.S. Dist. LEXIS 129939, at *96-97 (N.D. Cal. July 22, 2020) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942).

Attorney fee awards using the percentage-of-the-fund method are generally substantially lower than 25% in megafund cases. "Absent unusual circumstances, the percentage will decrease as the size of the fund increases." *Alexander v. FedEx Ground Package Sys., Inc.,* No. 05-cv-00038, 2016 U.S. Dist. LEXIS 78087, at *4 (N.D. Cal. June 15, 2016) (Chen, J.); *see also In re High-Tech Employee Antitrust Litig.,* No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 118052, at *49 (N.D. Cal. Sep. 2, 2015) (median attorney's fees award in a sample of 68 megafund class action settlements over a 16-year period was 10.2%).

This Court faced a similar 25% fee request in *Gutierrez v. Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 67298. As this Court likely recalls, class counsel secured a $203 million restitutionary award against Wells Fargo following a two-week bench trial. *Id.* at *1. Counsel requested 25% of the common fund ($50.7 million) as a fee award. *Id.* at *2. The court instead awarded 9%. *Id.* at *8. "[A]warding 25 percent of the $203 million megafund would result in 'windfall profits,' defying reasonableness." This Court explained:

> [B]lindly adopting the 25-percent benchmark in this $203 million megafund action would lead to an unreasonable result. Applying that percentage in a "formulaic or mechanical fashion" would result in a windfall to class counsel utterly divorced from the realities of the case. Class counsel's request is "absurd," "extremely ridiculous," "extremely high," "inordinately excessive," "outlandish," "immoral," "outrageous," and "extravagant," said various class members (Cooper Exh. A).

*Id.* at 12-13. The court cited as "reasonable" a series of settlements where the recovery for class counsel fees ranged from 1.4% to 16% of the common fund. *Id.* at *27.[5] As one class member put

---

[5] Citing *In re Citigroup Inc. Bond Litigation*, 988 F. Supp. 2d 371, 375 (S.D.N.Y. 2013) (awarding 16% of $730 million common fund); *In re LDK Solar Securities Litigation*, No. C 07-5182, 2010 U.S. Dist. LEXIS 87168, at *10-12 (N.D. Cal. July 29, 2010) (awarding 13.75% of $16million dollar settlement); *In re Sutter Health Uninsured Pricing*

it, if we divide class counsel's total request for more than $50.7 million by the 10,346 hours claimed by class counsel that would translate to more than $4,900 per hour. Such compensation is "ridiculous." *Id.* at *8.

By comparison, if this Court were to take class counsel's total fee request of $112.8 million here and divide it by the total number of hours claimed by class counsel for all timekeepers (34,503), the blended rate for all timekeepers (including associates, paralegals, summer associates, and interns) would be $3,269 per hour.

Like in *Gutierrez*, application of the 25% benchmark would result in a significant windfall for class counsel at the expense of the class. This Court should likewise appropriately reduce class counsel's requested award.

**B.   The Large Size of the Settlement Was Principally Due to the Egregious Price Hikes of Defendant Bausch Health.**

Awarding 25% of the common fund also is not appropriate in the present case because the substantial size of the common fund resulted from extraneous factors "not entirely attributable to class counsel's skill." *Gutierrez*, 2015 U.S. Dist. LEXIS 67298, at *5; *see also In re Optical Disk Drive*, 959 F.3d at 933. Here, damages recoverable in this case ranged *at least* from $1.5 to $2.7 billion plus an award of reasonable attorney's fees.[6] The huge potential recovery was primarily due to defendant Bausch Health's strategy of grossly inflating the price of Glumetza by over 800%

---

*Cases*, 171 Cal. App. 4th 495, 503, 89 Cal. Rptr. 3d 615 (Cal. Ct. App. 2009) (affirming award of 1.4% of $276 million settlement); *In re Bristol-Myers Squibb Securities Litigation*, 361 F. Supp. 2d 229, 237 (S.D.N.Y. 2005) (awarding 3.9% of $300 million dollar settlement); *In re Infospace, Inc.*, 330 F. Supp. 2d 1203, 1216 (W.D. Wash. 2004) (awarding 11.48% of $34.4 million); *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465, 486 (S.D.N.Y. 1998) (awarding 14% percent of $1.027 billion settlement); *In re MGM Grand Hotel Fire Litigation*, 660 F. Supp. 522, 529 (D. Nev. 1987) (awarding 7% of $205 million settlement).

[6]   According to the Barnes Declaration, single damages ranged from $500 to $900 million. (ECF 382 at ¶ 107.) Had class counsel prevailed at trial, damages would have been trebled. 15 U.S.C. § 15(a) ("[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws . . . shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.").

While the National Wholesalers do not have access to the confidential and sealed documents that support the Barnes declaration, the National Wholesalers note that the amended class action complaint states that there were $2.8 billion in overcharges suffered by the direct purchasers. (ECF 226 at ¶¶ 12, 209.) "Altogether, the defendants' unlawful extension of the Glumetza monopoly caused direct purchasers to overpay by more than $2.8 billion . . . and continues to cause substantial overcharges today . . . ." (ECF 226 at ¶ 209.) Also, at the class certification stage, class counsel's expert estimated single damages of approximately $2.3 billion. (ECF 347 at p. 15.)

in 2015 after it secured its monopoly. (*See* ECF 226 (Amended Complaint) at ¶¶ 11, 192-196.) "As a result, Glumetza sales skyrocketed from $145 million in the first two quarters of 2015 to more than $818 million in the two quarters after Bausch took the price increases." (ECF 226 at ¶ 195.) This Court noted with keen interest how Bausch Health's counsel will "argue that the 800 percent price hike served competition." (ECF 347 at p. 13.)

Where, as here, the central reason why damages are so high is due to extraneous factors beyond the skill of legal counsel, using a percentage-of-the-fund method (particularly a high percentage) would lead to an obvious windfall. The huge potential recovery in this case was due to facts on the ground, not entirely based upon class counsel's skill.

Nor did the settlement obtained by class counsel generate benefits beyond the settlement fund. While the Complaint had sought injunctive relief against defendants, there was no injunctive relief as part of the settlement.

C. **Class Counsel Nullified Their Risk By Settling the Case.**

Class counsel contend a 25% fee award is warranted in light of the substantial risk they took in the case. The National Wholesalers do not deny that class counsel took risk in developing and prosecuting the present lawsuit. But counsel ultimately avoided the risk of a "zero recovery" by settling the matter and avoiding the risks of trial and potential appeals. *Cf. Gutierrez,* 2015 U.S. Dist. LEXIS 67298, at *1 (two week trial).

Given the huge potential damages in the case (at least, $1.5 to $2.7 billion) and the optics of the 800% price increase, it is no surprise defendants were willing to settle for a significant sum. The National Wholesalers did not participate in the underlying settlement discussions, and the National Wholesalers did not advise class counsel to settle the case for a sum certain to avoid the risks of trial. (Declaration of Steven Winick, filed herewith, at ¶ 5.) Class counsel cannot thus contend they wanted to take greater risk in pursuit of a larger recovery but that the National Wholesalers pushed them to settle for a sum certain.

The National Wholesalers have had experience in generic delay antitrust cases by virtue of the fact that they collectively represent the largest class members by purchase volume. While not every generic delay case is a winner, the great majority are. In the last ten years, only one generic

delay antitrust case has gone to trial (resulting in a defense verdict), and yet during the same time period there have been approximately 28 settlements, not including the present action. (Winick Decl. at ¶ 5.)

The bottom-line is that while generic delay antitrust cases are large, expensive, and complex cases with no guarantees, there is a strong track record that if a case can survive preliminary motions and a class is certified, class counsel can monetize the case into a significant fee recovery, with little risk, through settlement.

**D.  The Lodestar Cross-Check Demonstrates that a Fee Award of 25% Resulting in a Multiplier of Five Is Not Reasonable or Appropriate.**

Class counsel wrongly contend a lodestar cross-check supports their 25% fee request. The purpose of a lodestar cross-check is to ensure the reasonableness of using a percentage approach and to prevent a windfall to legal counsel. *In re Optical Disk Drive,* 959 F.3d at 930. "The lodestar cross-check is important for courts dealing with a settlement fund that exceeds $100 million. In such 'megafund' cases, courts are cautious about simply approving an award of a percentage (such as the typical one-third) if such a percentage yields a fee that is more than double the lodestar." *In re Loestrin 24 Fe Antitrust Litig.*, No. 1:13-md-2472-WES-PAS, 2020 U.S. Dist. LEXIS 125745, at *42-43 (D.R.I. July 17, 2020) (*citing Namenda*).

There are two steps to a lodestar cross-check analysis. The first is to examine class counsel's actual attorney's fees (rates and hours) to establish a reasonable lodestar, and the second is to compare that lodestar to the requested fees. As to the reasonableness of class counsel's lodestar, the National Wholesalers have little to say. To effectively evaluate the reasonableness of class counsel's lodestar, the National Wholesalers would need to conduct discovery as to whether unreasonable duplication of efforts took place. Reviewing the submissions of class counsel only raises questions, not conclusions.

But, even assuming that class counsel's $22.78 million lodestar is completely reasonable and not subject to any reductions, class counsel's request for a 4.99 multiplier is not remotely reasonable. As applied to the present case, a multiplier of this magnitude would result in a windfall of $90 million to class counsel above and beyond their stated lodestar. And, as noted above, this

would translate to a blended hourly rate of $3,269 for every one of class counsel's timekeepers without regard to their position. While class counsel deserve to be rewarded for their efforts in this case, paying them an average rate of $3,269 per hour is far from reasonable.

Class counsel maintain that a multiplier of nearly five is justified by the size of the settlement obtained. Yet as then-Chief Judge McMahon of the Southern District of New York aptly stated in the *Namenda* decision (discussed more fully below), very large settlements warrant a smaller multiplier, not a larger one:

> This Court does not accept class counsel's argument that an unprecedentedly large settlement warrants a commensurately unprecedentedly large fee award. Rather, in my view, the larger the settlement value, the less the need for a multiplier to nudge the plaintiffs' bar to pursue large class actions like this one. ***Where class counsel reaches a settlement for hundreds of millions of dollars, a four-or-five times multiplier strikes me as both unseemly and unnecessary to protect the interests of the class.***

2020 U.S. Dist. LEXIS 104028, at *19 (internal citations omitted, emphasis added).

In *Namenda*, the court rejected a percentage-based fee that would have resulted in a multiplier of 4.5 over lodestar, concluding that such an award was not fair and reasonable under the circumstances. *Id.* at *19. Judge McMahon ultimately decided the "best course" was to "leave the lodestar alone but cut the multiplier." The only question was "by how much." *Id.* at *17-18 (citing *In re Petrobras Securities Litig.*, 317 F. Supp. 3d 858, 876 (S.D.N.Y. 2018) where the multiplier was reduced from 2.7 to 1.78 where class counsel stood to receive "very large amounts of money in absolute terms . . . under any analysis").

The *Namenda* court did its own research to find comparable multipliers and asserted that "[t]he largest multiplier we located in a recent case was 2.3 times lodestar, and the fee amount was less than a quarter of what plaintiffs are asking here - and that case, like this one, settled on the eve of trial, which means trial preparation had been completed." *Namenda*, 2020 U.S. Dist. LEXIS 104028, at *20-21.

The common fund in *Namenda* was $750 million, and Judge McMahon determined that "[g]iven the sheer magnitude of the numbers, I am not prepared to award anything like the 4.5 times lodestar requested by class counsel - even if that number is only 21% of the common fund."

*Namenda*, 2020 U.S. Dist. LEXIS 104028, at *22. Judge McMahon ultimately awarded a "twice lodestar" as a "success fee" that ended up representing 9.3% of the common fund, which she described as a "handsome payday for counsel." *Id.*; *see also In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167, 172 (D. Mass. 2014) (fee award in mega-case of one-third of fund is too high where lodestar cross-check establishes that multiplier on lodestar is 3.97 and lodestar itself seems overstated).

Other courts have reduced the multiplier when it was necessary to prevent a windfall recovery. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 U.S. Dist. LEXIS 129939, at *96-97 (N.D. Cal. July 22, 2020) (determining that in a data breach case with a large class, downward departure from "rote application of the 25% benchmark" was necessary to prevent a "windfall" because 25% represented "roughly $10 million more than Plaintiffs' proposed lodestar"); *Etter v. Allstate Ins. Co.*, No. C 17-00184 WHA, 2018 U.S. Dist. LEXIS 189136, at *11-13 (N.D. Cal. Nov. 4, 2018) (Alsup, J.) (determining that a multiplier of 3.11 on a fee lodestar of $766,000 was "too high" and that instead a "multiplier of 2.53 [$1.5 million] is appropriate"); *see also In re Apple Inc. Device Performance Litig.*, No. 5:18-md-02827-EJD, 2021 U.S. Dist. LEXIS 50546 (N.D. Cal. Mar. 17, 2021) (finding that a 2.43 multiplier was too high and would decrease the recovery for the class precipitously and reducing it to 2.232).

Significantly, a 4.99 multiplier also would be substantially larger than multipliers historically approved in generic delay cases, particularly megafund cases. (*See* Winick Decl. at ¶¶ 6-7 and Exhibit A.) As the Winick Declaration reflects, the fee request here would provide a multiple higher than any other generic delay case in the last decade. The average multiplier applied across generic delay cases over the last decade is just 1.52, and with one exception, every multiplier is less than three. (Winick Decl. ¶¶ 6-7 and Ex. A.)

The multipliers listed in Exhibit A to the Winick Declaration demonstrate that a multiplier of five would be an outlier, and, by comparison, a multiplier of two would adequately reward counsel for their efforts in this case. Awarding a multiplier of 4.99 would simply be a gratuitous windfall at the expense of class members that incurred the antitrust injury.

The cases cited by class counsel (relegated to a footnote on page 24) are inapposite. Neither *Steiner v. Am. Broad Co.*, 248 Fed. Appx. 780 (9th Cir. 2007) nor *Perez v. Rash Curtis & Assoc.*, No. 4:16-cv-03396-YGR, 2021 U.S. Dist. LEXIS 189889 (N.D. Cal. Oct. 1, 2021) were megafund cases (*Steiner* was a $65 million settlement and *Perez* was $75 million) or generic drug delay cases. Finally, class counsel misstate the multipliers applied in *Gutierrez*. In that case, this Court awarded one set of counsel that "pulled victory from the jaws of defeat" a multiplier of 5.5, but this Court awarded the original counsel that filed the case only a multiplier of 2.0. *Gutierrez*, 2015 U.S. Dist. LEXIS 67298, at *23-24. Overall, class counsel received an $18.5 million fee award, which equated to only 9% of the settlement fund—a far cry from the 25% fee requested here.

Finally, the significant time and effort employed by class counsel in this case is already rewarded by a lodestar based on high hourly rates. Nine timekeepers had rates over $900/hr and 26 over $700/hr. The average rates for partners is nearly $800/hr and for associates is over $500/hr. This Court should not consider factors to the extent they are already encompassed within the lodestar, such as high rates. "The factor of extraordinary skill appears susceptible to improper double counting. For the most part, the difficulty of a legal question and the quality of representation are already encompassed in the lodestar. A more difficult legal question typically requires more attorney hours, and a more skillful and experienced attorney will command a higher hourly rate." *Ridgway v. Walmart Stores,* 269 F. Supp. 3d 975, 996 (N.D. Cal. 2017) (Illston, J.).

Overall, the lodestar cross-check does not support class counsel's fee request. A multiplier of five is not warranted by existing case law or by comparison to other generic drug delay cases. The purpose of the cross-check is to ensure that class counsel's fee request is reasonable and to prevent a windfall to legal counsel. Far from supporting class counsel's fee request, the cross-check here well illustrates that a 25% fee award is out-of-step and would provide a huge windfall to class counsel.

# III.

# CONCLUSION

For all these reasons, the National Wholesalers respectfully submit that a multiplier of 4.99 is excessively high for this case. The Court in the *Namenda* case properly recognized that even a two times lodestar is a handsome reward for class counsel. The same holds true here.

DATED: December 22, 2021

BUCHALTER, A Professional Corporation

By: /s/ Steven H. Winick
STEVEN H. WINICK (SBN 160815)
Attorneys for Objector and Absent Class Member
MCKESSON CORPORATION

DATED: December 22, 2021

By: /s/ Wiliam Oxkley
William Oxley (SBN 136793)
Baker & Hostetler, LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025
Telephone: 310.442.8894
woxley@bakerlaw.com

Robert Tucker*
Baker & Hostetler, LLP
200 Civic Center Drive, Suite 1200
Columbus, OH 43215
Telephone: 614.462.2680
rtucker@bakerlaw.com

Attorneys for Objector and Absent Class Member
CARDINAL HEATH, INC.

DATED: December 22, 2021

By:   /s/ Robert D. Finkel
Robert D. Finkel (SBN 15409)
BUCHANAN INGERSOLL & ROONEY LLP
One America Plaza
600 West Broadway, Suite 1100
San Diego, CA 92101
Telephone: (613) 238-8700
Facsimile: (613) 702-3898
robert.finkel@bipc.com

Samantha L. Southall*
BUCHANAN INGERSOLL & ROONEY P.C.
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102
Telephone: (215) 665-8700
Facsimile: (215) 665-8760
samantha.southall@bipc.com
*pro hac vice motion to be filed

Attorneys for Objector and Absent Class Member AmericsourceBergen Drug Corporation

*Pro hac vice motion to be filed if necessary.

### FILER'S ATTESTATION

Pursuant to Local Rule 5-1(i)(3) of the Northern District of California, regarding signatures, I, Steven H. Winick, attest that concurrence in the filing of this document has been obtained.

Dated: December 22, 2021      /s/ Steven H. Winick
STEVEN H. WINICK (SBN 160815)

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2021, I caused to be electronically filed the foregoing document with the Clerk of the Court via CM/ECF. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing systems. Parties may access the filing through the Court's CM/ECF System.

/s/ Steven H. Winick