Thomas M. Sobol (admitted *pro hac vice*)
Lauren G. Barnes (admitted *pro hac vice*)
Jessica R. MacAuley (admitted *pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone: (617) 482-3700
Fax: (617) 482-3003
Tom@hbsslaw.com
Lauren@hbsslaw.com
JessicaM@hbsslaw.com

Shana E. Scarlett (SBN 217895)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Fax: (510) 725-3001
shanas@hbsslaw.com

*Co-Lead Counsel for the Direct Purchaser Class*

*Additional counsel on signature page*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| *IN RE GLUMETZA ANTITRUST LITIGATION* | Case No.: 3:19-cv-05822-WHA |
| This Document Relates To:<br><br>All Actions | **PURCHASERS' MOTION TO EXCLUDE OPINIONS OF DR. BRUCE STROMBOM**<br><br>**ORAL ARGUMENT REQUESTED**<br>Date: April 22, 2021<br>Time:  TBD<br>Courtroom: TBD<br><br>The Honorable William Alsup |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on April 22, 2021 at 8:00 a.m., or as soon thereafter as the matter may be heard before the Honorable William Alsup, at a location and manner to be determined in accordance with the Rules and Covid-19 guidance issued by the Northern District and Judge Alsup, the Direct Purchasers Class, Retailers and Humana Inc. (collectively "Purchasers") will and hereby does move this Court for an order to exclude portions of the expert report of Bruce Strombom, Ph. D ("Strombom Report") from summary judgment and trial of this action (the "Motion").

Purchasers move on the grounds that the Strombom Report fails to comply with the requirements of Fed. R. Evid. 702 and the standards established in *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579 (1993) and its progeny.  Purchasers' Motion is based on this Notice of Motion and Motion, the memorandum, incorporated herein, the Declaration of Jessica R. MacAuley ("MacAuley Decl.") and supporting exhibits, concurrently filed herewith, all pleadings and papers filed in this matter and in support of Purchasers' Motion, and on such further argument as may be presented at the hearing on this Motion.

Dated: January 15, 2021                          Respectfully submitted,

                                                 */s/   Lauren G. Barnes*
                                                 Thomas M. Sobol (admitted *pro hac vice*)
                                                 David S. Nalven (admitted *pro hac vice*)
                                                 Lauren G. Barnes (admitted *pro hac vice*)
                                                 Kristen A. Johnson (admitted *pro hac vice*)
                                                 Jessica R. MacAuley (*admitted pro hac vice*)
                                                 Rochella T. Davis (admitted *pro hac vice*)
                                                 **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                                 55 Cambridge Parkway, Suite 301
                                                 Cambridge, MA 02142
                                                 Telephone: (617) 482-3700
                                                 Fax: (617) 482-3003
                                                 Tom@hbsslaw.com
                                                 Davidn@hbsslaw.com
                                                 Lauren@hbsslaw.com
                                                 Kristenj@hbsslaw.com

JessicaM@hbsslaw.com
RochellaD@hbsslaw.com

Shana E. Scarlett (SBN 217895)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Fax: (510) 725-3001
shanas@hbsslaw.com

Steve D. Shadowen (admitted *pro hac vice*)
Richard Brunell (admitted *pro hac vice*)
Tina J. Miranda (admitted *pro hac vice*)
Matthew C. Weiner (admitted *pro hac vice*)
**HILLIARD & SHADOWEN LLP**
1135 W. 6th Street, Suite 125
Austin, TX 78703
Telephone: (855) 344-3298
steve@hilliardshadowenlaw.com
rbrunell@hilliardshadowenlaw.com
tmiranda@hilliardshadowenlaw.com
matt@hilliardshadowenlaw.com

Joseph M. Vanek (*admitted pro hac vice*)
David P. Germaine (*admitted pro hac vice*)
Eamon P. Kelly (*admitted pro hac vice*)
Daniel Shmikler (*admitted pro hac vice*)
Alberto Rodriguez (*admitted pro hac vice*)
John P. Bjork (*admitted pro hac vice*)
Robert D. Cheifetz (admitted pro hac vice)
**SPERLING & SLATER**
55 W. Monroe Street, Suite 3200
Chicago, IL 60603
jvanek@sperling-law.com
dgermaine@sperling-law.com
ekelly@sperling-law.com
dshmikler@sperling-law.com
arodriguez@sperling-law.com
jbjork@sperling-law.com
robc@sperling-law.com

*Co-Lead Counsel for Direct Purchaser Class*

Anna T. Neill (SBN 270858)
Scott E. Perwin (*admitted pro hac vice*)
Lauren C. Ravkind (*admitted pro hac vice*)
**KENNY NACHWALTER P.A.**
Four Seasons Tower, Suite 1100
1441 Brickell Avenue
Miami, FL 33131
Telephone: (305) 373-1000
Facsimile: (305) 372-1861
sperwin@knpa.com
lravkind@knpa.com

*Counsel for Walgreen Co., Kroger Co., Albertsons Companies, Inc., Hy-Vee, Inc., and H-E-B LP*

Barry L. Refsin (*admitted pro hac vice*)
Alexander J. Egerváry (*admitted pro hac vice*)
Chelsea M. Nichols (*admitted pro hac vice*)
Caitlin V. McHugh (*admitted pro hac vice*)
**HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**
One Logan Square, 27th Floor
Philadelphia, PA 19103
(215) 496-7031
brefsin@hangley.com
aegervary@hangley.com
cnichols@hangley.com
cmchugh@hangley.com

Monica L. Kiley (*admitted pro hac vice*)
Eric L. Bloom (*admitted pro hac vice*)
**HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**
2805 Old Post Road, Suite 100
Harrisburg, PA 17110
(717) 364-1030
mkiley@hangley.com
ebloom@hangley.com

*Counsel for Rite Aid and CVS Pharmacy*

Peter D. St. Phillip (admitted *pro hac vice*)
Uriel Rabinovitz (admitted *pro hac vice*)
**LOWEY DANNENBERG, P.C.**.
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
PStPhillip@lowey.com
URabinovitz@lowey.com

Todd M. Schneider
Jason H. Kim

Matthew S. Weiler
**SCHNEIDER WALLACE COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
TSchneider@schneiderwallace.com
JKim@schneiderwallace.com
MWeiler@schneiderwallace.com

*Counsel for Plaintiff Humana Inc.*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARD .......................................................................................................... 2

ARGUMENT........................................................................................................................ 2

      I.      DR. STROMBOM'S OPINION THAT DIRECT PURCHASER OVERCHARGES MUST BE REDUCED BY REBATES RECEIVED BY INDIRECT PURCHASERS IS CONTRARY TO LAW................................................................ 2

      II.     DR. STROMBOM'S OPINION THAT THE SETTLEMENT AGREEMENT PRODUCED PROCOMPETITIVE BENEFITS IS CONTRARY TO LAW........ 7

CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Pepper,*
    139 S. Ct. 1514 (2019) ................................................................................................... 4

*In re Cipro Cases I & II,*
    348 P.3d 845 (Cal. 2015) ............................................................................................... 8

*County of San Mateo v. CSL Ltd.,*
    No. 10-cv-05686-JSC, 2014 WL 4100602 (N.D. Cal. Aug. 20, 2014) ......................... 2

*Daubert v. Merrell Dow Pharms., Inc.,*
    509 U.S. 579 (1993) .................................................................................................. 1, 2

*Fed. Trade Comm'n v. Actavis, Inc.,*
    570 U.S. 136 (2013) ........................................................................................... 2, 7, 8, 9

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.,*
    392 U.S. 481 (1968) .................................................................................................. 4, 6

*Illinois Brick,* 431 U.S. 720 (1977) ................................................................................... 4

*In re Impax Labs., Inc.,*
    FTC No. 9373, 2019 WL 1552939 (Mar. 28, 2019), *app. pending, Impax Lab v.*
    *FTC,* No. 19-60394 (5th Cir.) .................................................................................. 8, 9

*King Drug Co. of Florence, Inc. v. Smithkline Beecham Corp.,*
    791 F.3d 388 (3d Cir. 2015) ......................................................................................... 8

*Loeffel Steel Prods., Inc. v. Delta Brands, Inc.,*
    387 F. Supp. 2d 794 (N.D. Ill. 2005) ........................................................................... 2

*Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.,*
    246 F.R.D. 293 (D.D.C. 2007) ..................................................................................... 6

*Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma,*
    468 U.S. 85 (1984) ........................................................................................................ 9

*In re Nexium Antitrust Litig.,*
    777 F.3d 9 (1st Cir. 2015) ............................................................................................. 6

*Ohio v. Am. Express Co.,*
    138 S. Ct. 2274 (2018) .................................................................................................. 9

*In re Processed Egg Prods. Antitrust Litig.,*
    881 F.3d 262 (3d Cir. 2018) ...................................................................................... 3, 5

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
    292 F.R.D. 544 (E.D. Tenn. 2013) ..................................................................................6

*In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*,
    325 F.R.D. 551 (E.D. Pa. 2016) ......................................................................................6

*United Food & Commercial Workers Local 1776 & Participating Employers Health &*
    *Welfare Fund v. Teikoku Pharma USA*,
    296 F. Supp. 3d 1142 (N.D. Cal. 2017) ..........................................................................2

**Other Authorities**

Fed. R. Evid. 702 ...............................................................................................................1

# INTRODUCTION

Purchasers request, pursuant to *Daubert* and Rule 702, that the Court exclude two opinions of defendants' damages expert Dr. Bruce Strombom[1] that contradict established law.[2]

First, Dr. Strombom opines that purchasers' overcharge damages should be reduced by rebates the brand manufacturers paid to indirect purchasers.[3] But in direct purchaser antitrust actions, "'a direct purchaser may recover the full amount of the overcharge,'" regardless of downstream effects, "'because the antitrust injury occurs and is complete when the defendant[s] sell[] at the illegally high price.'"[4] This Court has already rejected Dr. Strombom's contrary approach as a matter of law in its class certification opinion, and no reason exists for the Court to reconsider its prior holding or expose the jury to opinions contrary to the law.

Second, Dr. Strombom opines that the settlement between Lupin and Depomed had procompetitive benefits because, he says, it permitted the introduction of generic Glumetza prior to the expiration of Depomed's patents, benefitting consumers by $1.28 billion.[5] But this opinion assumes that the challenged patents were both valid and infringed, an assumption contrary to the

---

[1] Ex. 3014 to MacAuley Decl., Expert Report of Bruce Strombom, Ph.D. (August 21, 2020) ("Strombom Rep."). That report responds to the reports of direct purchaser plaintiffs' expert Dr. Jeffrey Leitzinger and retailer plaintiffs' expert Dr. Keith Leffler. Humana also joins the second part of this motion to exclude Dr. Strombom's opinion on procompetitive benefits insofar as Dr. Strombom's separate Humana-related report relies upon and references his August 21, 2020 report. *See* Ex. 3034 to MacAuley Decl., Expert Report of Bruce Strombom, Ph.D. (October 21, 2020) ¶ 10 n. 6 (citing Section IV of Dr. Strombom's August 21, 2020 report).

[2] Ex. 3014, Strombom Rep. §§ II (¶¶ 17-19), IV.C (¶¶ 47-51), IV.D (¶¶ 52-53), V (¶¶ 54-68). Dr. Strombom offers other opinions concerning the methodologies that purchasers' experts employed in calculating overcharges, and recalculates overcharges based on different assumptions about the offense-free world provided by Defendants' counsel. Purchasers will dispute those opinions at trial.

[3] *Id.* ¶¶ 18-19, 54-68.

[4] Order Certifying Class (Aug. 15, 2020), ECF No. 347 ("Class Cert. Order"), at 17 (quoting *In re Skelaxin (Metaxalone) Antitrust Litigation*, No. MD 12-02343 CLC, 2014 WL 2002807, *5 (E.D. Tenn. May 15, 2014)) (alterations in original).

[5] Ex. 3014, Strombom Rep. ¶¶ 17, 47-53.

express holding of the Supreme Court in *Actavis*.[6] Dr. Strombom's opinions about procompetitive

benefits are also contrary to law because they seek to justify the settlement as a whole (or

settlements in general), whereas *Actavis* and the rule of reason require defendants to justify the

specific restraint that is challenged *within* the settlement agreement, *i.e.*, the no-AG provision.

Because they are contrary to the law, both of these opinions are irrelevant and unreliable,

and each should be stricken.

## LEGAL STANDARD

Expert testimony is admissible pursuant to Federal Rule of Evidence 702 only if it is offered

by a qualified expert, reliable, and relevant.[7] "Expert opinions that are contrary to law are

inadmissible. They cannot be said to be scientific, to be reliable, or to be helpful to the trier of fact."[8]

## ARGUMENT

## I.  DR. STROMBOM'S OPINION THAT DIRECT PURCHASER OVERCHARGES MUST BE REDUCED BY REBATES RECEIVED BY INDIRECT PURCHASERS IS CONTRARY TO LAW.

As this Court recognized in certifying the direct purchaser class, purchasers' overcharge

damages are the difference between what purchasers paid and what they would have paid but for

defendants' conduct that delayed generic Glumetza.[9] At deposition, Dr. Strombom acknowledged

---

[6] *Fed. Trade Comm'n v. Actavis, Inc.*, 570 U.S. 136, 147-48 (2013).

[7] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).

[8] *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 806 (N.D. Ill. 2005) (citations omitted); *see also, e.g., United Food & Commercial Workers Local 1776 & Participating Employers Health & Welfare Fund v. Teikoku Pharma USA*, 296 F. Supp. 3d 1142, 1183 (N.D. Cal. 2017) ("[E]xclusion of opinions that are irrelevant as a matter of law or contrary to the law is appropriate through the *Daubert* process.").

[9] Class Cert. Order at 14; *see also County of San Mateo v. CSL Ltd.*, No. 10-cv-05686-JSC, 2014 WL 4100602, *2 n.3 (N.D. Cal. Aug. 20, 2014) ("An 'overcharge' is the 'difference between the price actually paid and the price that would have been paid "but for" the unlawful conduct multiplied by the quantity purchased.'") (quoting 12 P. Areeda & H. Hovenkamp, *Antitrust Law* ¶ 395, at 376 (3d ed. 2007)).

this "standard measure," but testified: "I'm doing a different calculation."[10] He asserts that

overcharges must be reduced by rebates on Glumetza that the brand manufacturers paid to indirect

purchasers, including rebates paid to non-purchasers such as Pharmacy Benefit Managers ("PBMs")

that pay for prescriptions on behalf of third-party benefit plans and insurance companies.[11]

Although these "indirect rebates" did not reduce the prices paid by the direct-purchaser

wholesalers to defendants, Dr. Strombom asserts that they should be deducted from purchasers'

overcharges so that damages reflect "the total amount of the overcharge paid *across the entire supply

chain*."[12] He claims that the overcharge calculations of purchasers' experts, Dr. Leitzinger and Dr.

Leffler, "which account only for discounts paid through direct purchasers, do not reflect the alleged

economic harm *to Glumetza purchasers* [and] the net prices manufacturers charged."[13] In support of

his argument, he contends (irrelevantly and misleadingly) that Dr. Leitzinger's estimate of

overcharges is more than three times Bausch's net revenue (or "net prices") for the period between

June 2015 and February 2016.[14]

---

[10] Ex. A to MacAuley Decl., Transcript of Deposition of Bruce Strombom (Nov. 9, 2020) ("Strombom Dep.") 75: 8-25, 79: 4-11.

[11] Ex. 3014, Strombom Rep. ¶¶ 18, 19, 54-68.

[12] *Id.* ¶ 18 (emphasis added); *id.* ¶ 54 (same); *see also* Ex. A, Strombom Dep. 96:6–97:19 ("attempting to evaluate the overcharge across the entire supply chain").

[13] *Id.* ¶ 61.

[14] *Id.* ¶¶ 62-64 & Figs. 3, 4. The claim is misleading because Dr. Strombom's calculations show that for the entire damage period, the Brand Defendants' net revenue was approximately equal to their overcharges. *See id.* at 29 (Fig. 3); *see also* Rebuttal Decl. of Jeffrey J. Leitzinger ¶ 61 (June 24, 2020), ECF No. 294. And this is without considering that Valeant's net revenue was understated by at least $120 million in "price appreciation credits" that the SEC found Valeant had misleadingly failed to report as Glumetza revenue. *See* Ex. 3015 to MacAuley Decl., SEC Cease and Desist Order ¶¶ 21, 22 (July 31, 2020); Ex. A, Strombom Dep. 48:12–49:3; 81:20–82:11 (acknowledging that price appreciation credits were not in the data he used to calculate Valeant's net revenue). The claim is irrelevant because "[d]amages recoverable by a plaintiff on a § 4 claim do not depend on the ill-gotten benefit of the wrongdoer." *In re Processed Egg Prods. Antitrust Litig.*, 881 F.3d 262, 276 (3d Cir. 2018).

Dr. Strombom's opinion is based on his interpretation of *Illinois Brick* as an economist.[15] According to Dr. Strombom, *Illinois Brick* stands for the proposition that "'even if the defendant shows that as a result of the overcharge the direct purchaser increased its price by the full amount of the overcharge, the direct purchaser may still claim injury from a reduction in the volume of its sales caused by its higher prices.'"[16] But Dr. Strombom's economic interpretation completely inverts the holding of *Hanover Shoe*, on which *Illinois Brick* was based.[17] In an overcharge case, the issue is not "economic harm," let alone such harm across the entire supply chain.

Indeed, this Court already rejected Dr. Strombom's opinion that it is necessary or appropriate to consider downstream rebates in calculating direct purchaser overcharges,[18] because it is inconsistent with well-settled law—*Hanover Shoe* and its progeny—under which "direct purchasers [are] injured to the full extent of the overcharge paid by them."[19]

At class certification, defendants and Dr. Strombom made the precise argument that appears in Dr. Strombom's merits report: that direct purchaser overcharges must take into account "discounts or rebates to indirect customers."[20] In his declaration in support, as in his merits report, Dr. Strombom claimed that "[f]ailing to account for indirect purchaser rebates overstates alleged harm."[21] Likewise, Dr. Strombom claimed that "Dr. Leitzinger's overcharges, which account for only discounts paid through direct purchasers . . . do not reflect the alleged economic harm to

---

[15] Ex. A, Strombom Dep. 77:7-21.

[16] Ex. 3014, Strombom Rep. 27 n.55 (quoting *Illinois Brick*, 431 U.S. at 733 n.13).

[17] *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 494 (1968).

[18] *See* Class Cert. Order at 16-17.

[19] *Illinois Brick*, 431 U.S. 720, 746 (1977); *see also Hanover Shoe*, 392 U.S. at 494; *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1525 (2019) ("If the iPhone owners prevail, they will be entitled to the *full amount* of the unlawful overcharge that they paid to Apple.").

[20] Defendants' Opposition to Direct Purchaser Class Plaintiffs' Motion for Class Certification (May 27, 2020), ECF No. 262.5 ("Defs.' Class Cert. Op."), at 19.

[21] Decl. of Bruce Strombom Ph.D. ¶ 105 (May 27, 2020) ("Strombom Class Decl."), ECF No. 262.20; *see also id.* ¶¶ 22, 105-112.

-4-

Glumetza purchasers when considering the substantial additional discounts Bausch provided [to indirect purchasers] that further reduce the net prices it charged."[22] He also made the same irrelevant and misleading argument that Dr. Leitzinger's estimate of overcharges was more than three times Bausch's net revenue (or "net prices") for the period between June 2015 and February 2016.[23]

The Court rejected these arguments because the claim that indirect rebates should be deducted "mistake[s] the cognizable harm here, the overcharge."[24] As the Court further explained, "Defendants also forget that the overcharge 'arose at the time the extra charge was paid,' regardless of whether the defendant later attempts to mitigate. So, their argument that Dr. Leitzinger's damages model 'does not reflect the many discounts and subsequent payments that must be accounted for to calculate the ultimate *net* price' falls flat."[25]

---

[22] *Id.* ¶ 112.

[23] *Id.* ¶¶ 106-108 & Figs. 19, 20. Defendants maintained (without citation): "In an overcharge case, it should not be possible for a defendant to overcharge[] someone by more than the defendant's own revenue." Defs. Class Cert. Op. at 18.

[24] Class Cert. Order at 16.

[25] *Id.* at 17 (quoting *Adams v. Mills*, 286 U.S. 397, 407 (1932)). Defendants further argued at class certification that wholesalers largely benefited from delayed generic entry and higher prices. *See* Defs.' Class Cert. Op. at 18 ("[W]holesalers can *benefit* as a result of generic delay, and the vast majority of claims in this case are held by class members that likely benefitted from such a delay."); Strombom Class Decl. ¶ 126. Dr. Strombom repeats that argument in his merits report in support of his rebates opinion. *See* Ex. 3014, Strombom Rep. ¶ 19 ("[T]he overcharge paid by direct purchasers does not represent economic harm to . . . direct purchasers, and many actually benefit from any alleged overcharges."); *id.* ¶ 55 & n. 53 (contending that "[w]holesalers sell pharmaceuticals at a 'cost-plus' markup"). But Dr. Strombom testified that "I haven't attempted to evaluate [whether wholesalers benefited] in this case." Ex. A, Strombom Dep. 51:18–52:9. In any event, this Court rejected the argument that wholesaler benefit, if any, was relevant to overcharges, noting "defendants' argument incorrectly focuses on the wholesaler's later realized profit margin instead of the actual injury here, the *overcharge*." Class Cert. Order at 17; *see also* Purchasers' Motion to Exclude the Report and Testimony of Tomas J. Philipson (filed herewith). Overcharge damages are neither reduced by direct purchasers' profits nor limited by antitrust violators' benefits. *See In re Processed Egg Prods.*, 881 F.3d at 276.

1    Dr. Strombom's analysis still "falls flat." Rebates that are paid to others in the distribution

2    chain are simply not germane to the overcharges paid by wholesalers.[26] Even in end-payor cases

3    under state law, the kinds of rebates that Dr. Strombom seeks to deduct from direct purchaser

4    overcharges are only relevant insofar as they are actually passed through to indirect purchasers, *i.e.*,

5    the parties seeking damages.[27] Dr. Strombom did not even *attempt* to show the extent to which the

6    rebates that he seeks to deduct from the direct purchaser overcharges were passed through to *any*

7    purchasers in the distribution chain for Glumetza, let alone that they impacted *direct* purchasers.[28]

8        Permitting Dr. Strombom to testify that overcharges should be reduced based upon

9    downstream events would improperly force the jury "down the rabbit hole of hypothetical issues"

10   that *Hanover Shoe* and *Illinois Brick* foreclose antitrust violators from asserting to minimize their

11   liability.[29] Accordingly, the Court should apply the law of the case and exclude it.

12

13

14

15

16

17

---

[26] *See, e.g., In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, 325 F.R.D. 551,
556 (E.D. Pa. 2016) (affirming "downstream evidence is irrelevant to Direct Purchasers' damages"
(emphasis omitted)); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 292 F.R.D. 544, 552 (E.D. Tenn.
2013) ("[D]own-stream discovery is not in any way relevant to the DPP's measure of
damages[.]"); *Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 246 F.R.D. 293, 304 (D.D.C. 2007)
(emphasizing "the true import of the *Hanover Shoe* rule [is] that a direct purchaser may recover the
full amount of the overcharge," regardless of downstream price effects, "because the antitrust
'injury occurs and is complete when the defendant sells at the illegally high price'" (quoting *In re
Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 313 (E.D. Mich. 2001))).

[27] *See In re Nexium Antitrust Litig.*, 777 F.3d 9, 28 n.23 (1st Cir. 2015). Dr. Strombom's principal
example of indirect rebates that should have been deducted are those paid to PBMs. *See* Ex. 3014,
Strombom Rep. ¶ 60. Such rebates are more like promotional expenses than price discounts to
*anyone*. Dr. Strombom acknowledged that "PBMs don't purchase pharmaceuticals," but "typically
act as agents for those who are purchasing them," and that rebates to PBMs may be given "to
encourage favored formulary placement." Ex. A, Strombom Dep. 84:18-21, 85:3-7.

[28] Dr. Strombom conceded that "I didn't attempt to evaluate how PBMs treated rebates in this
case," *i.e.*, whether the rebates were passed on to consumers. *Id.* at 84:12-17.

[29] Class Cert. Order at 17 (quoting *In re Skelaxin*, 2014 WL 2002887, at *5).

## II.  DR. STROMBOM'S OPINION THAT THE SETTLEMENT AGREEMENT PRODUCED PROCOMPETITIVE BENEFITS IS CONTRARY TO LAW.

Dr. Strombom opined that settlements can be procompetitive if they "guarantee earlier entry than if the at-issue patents are found to be valid or infringed."[30] Assuming that Depomed would have prevailed in the patent litigation, he opined that the settlement agreement in this case generated $1.28 billion in procompetitive benefits.[31] He also offered the economic opinion that patent settlements may be procompetitive because "[t]he possibility of settlements encourages patent challenges by increasing the likelihood that generic entrants are able to derive value and bring their products to market."[32] These opinions are legally defective for two reasons.

First, Dr. Strombom's opinion that the settlement was procompetitive because it allowed "early entry" that saved consumers more than a billion dollars is based on an assumption that the patents asserted against Lupin were both (1) valid and (2) infringed. This is precisely the assumption the Supreme Court rejected in *Actavis*.[33] In *Actavis*, the Eleventh Circuit relied on the "scope of the patent" rule in holding that a settlement is "immune from antitrust attack" if its anticompetitive effects "fall within the scope of the patent's exclusionary potential," *i.e.*, if the patent is presumed to be both valid and infringed.[34] Thus, any settlement allowing entry prior to a patent's expiration was presumptively procompetitive, because the patent—presumed to be valid and infringed—could exclude all generic competition until it expired.[35] But the Supreme Court

---

[30] Ex. 3014, Strombom Rep. ¶ 48.

[31] *Id.* ¶¶ 52–53.

[32] *Id.* ¶ 50; *see also id.* ¶ 51 ("To the extent that such Paragraph IV challengers may have a weak case, settlements can alleviate those costs.").

[33] *See Actavis*, 570 U.S. at 141, 146–47.

[34] *Id.* at 136.

[35] *Id.* at 146.

reversed the Eleventh Circuit and rejected this presumption, instead recognizing that a patent "may or may not be valid, and may or may not be infringed."[36]

As the Supreme Court explained:

> An unexplained large reverse payment itself would normally suggest that the patentee has serious doubts about the patent's survival. And that fact, in turn, suggests that the payment's objective is to maintain supracompetitive prices to be shared among the patentee and the challenger rather than face what might have been a competitive market—the very anticompetitive consequence that underlies the claim of antitrust unlawfulness.[37]

Moreover, a large reverse payment, "if otherwise unexplained[,] likely seeks to prevent the risk of competition … [which is] the relevant anticompetitive harm,"[38] and results in a later settlement entry date than without the payment.[39] Accordingly, Dr. Strombom "cannot argue that a settlement is procompetitive simply because it allows competition earlier than would have occurred if the brand had won the patent action."[40]

Second, Dr. Strombom's opinions about procompetitive benefits are also contrary to *Actavis*, and the rule of reason it adopted, because they fail to "show a procompetitive rationale *for the*

---

[36] *Id.* at 147; *see also* Ex. A, Strombom Dep. 73:25–74:10 (agreeing that at the time of the settlement, defendants did not know whether the patents would be found valid or infringed and that entering the no-AG agreement allowed them to avoid such a determination).

[37] *Actavis*, 570 U.S at 157.

[38] *Id.*

[39] *See In re Impax Labs., Inc.*, FTC No. 9373, 2019 WL 1552939, *32 (Mar. 28, 2019) (explaining *Actavis* recognized that "patent licenses 'permitting the patent challenger to enter the market before the patent expires' bring about competition; but . . . stressed that competitive harm arises when the patentee makes a reverse payment to preclude the risk of *even earlier* competition" (quoting *Actavis*, 570 U.S. at 154)), *app. pending, Impax Lab v. FTC*, No. 19-60394 (5th Cir.); *King Drug Co. of Florence, Inc. v. Smithkline Beecham Corp.*, 791 F.3d 388, 408 (3d Cir. 2015) ("Notwithstanding [the] 'early entry' [in *Actavis*], the antitrust problem was that, as the Court inferred, entry might have been earlier . . . had the reverse payment not been tendered"). Thus, it is irrelevant whether, as Dr. Strombom assumes, Lupin thought it did not have a strong case. Ex. 3014, Strombom Rep. ¶¶ 49, 51. The payment "prevented [Lupin] from demanding an even earlier entry date." *In re Impax Labs.*, 2019 WL 1552939, at *36.

[40] *In re Cipro Cases I & II*, 348 P.3d 845, 870 (Cal. 2015); *King Drug Co. of Florence*, 791 F.3d at 406 (reverse-payment settlement is "not immunized, of course, simply because of [an] early-entry 'license'").

*restraint*" shown by the plaintiff to be anticompetitive, *i.e.*, the no-AG provision.[41] As the Supreme Court explained in *Actavis*, a defendant must justify "the presence of the *challenged term* and show☐ the lawfulness of *that term* under the rule of reason."[42] "[O]ne who makes such a payment may be unable to explain and to justify it."[43] Policies favoring the settlement of disputes do not justify a reverse-payment settlement because Hatch-Waxman cases can be, and generally are, settled without a reverse payment.[44]

Dr. Strombom's opinions about the benefits of settlement do not explain the no-AG provision as anything other than a payment for delayed generic entry. Dr. Strombom admits he offers no analysis of "the procompetitive justifications for a no-AG agreement."[45] He admits he did not analyze whether the no-AG provision had procompetitive benefits because it decreased prices or increased supply.[46] He did no analysis to determine whether the entry in the actual settlement was earlier or later than a settlement agreement without a no-AG provision,[47] nor did he attempt to determine if any part of his supposed $1.28 billion in procompetitive value was attributable to the no-AG provision.[48] And, although he agreed that a no-AG provision could delay generic

---

[41] *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018) (emphasis added); *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85, 104 (1984) (the "essential inquiry" is whether "the challenged restraint enhances competition").

[42] *Actavis*, 570 U.S. at 156 (emphases added).

[43] *Id.* at 158.

[44] *Id.* (drug companies may settle Hatch Waxman cases "by allowing the generic manufacturer to enter the patentee's market prior to the patent's expiration, without the patentee paying the challenger to stay out prior to that point"); *see also In re Impax Labs.*, 2019 WL 1552939, at *40 (stressing that "branded and generic pharmaceutical companies routinely—and far more often than not—settle patent litigation disputes without reverse payments").

[45] Ex. A, Strombom Dep. 63:17–64:1; *see id.* at 69:17-22 ("my analysis isn't specific to the no-AG agreement").

[46] *Id.* at 69:8-22.

[47] *Id.* at 74:11-15.

[48] *Id.* at 74:17–75:1.

entry,[49] he did not try to determine whether the procompetitive effects of the settlement would be larger than he calculated if it did not contain a no-AG agreement.[50]

Because Dr. Strombom's opinions on procompetitive benefits are contrary to law and do not fit any issue in this case, they should be excluded.

### CONCLUSION

For the foregoing reasons, the Court should exclude Dr. Strombom's opinions that overcharge damages should be reduced by indirect rebates (paragraphs 18-19 and 54-68 of his report) and that the settlement had procompetitive benefits (paragraphs 17 and 47-53 of his report).

Dated: January 15, 2021                    Respectfully submitted,

                                           */s/   Lauren G. Barnes*
                                           Thomas M. Sobol (admitted *pro hac vice*)
                                           David S. Nalven (admitted *pro hac vice*)
                                           Lauren G. Barnes (admitted *pro hac vice*)
                                           Kristen A. Johnson (admitted *pro hac vice*)
                                           Jessica R. MacAuley (*admitted pro hac vice*)
                                           Rochella T. Davis (admitted *pro hac vice*)
                                           **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                           55 Cambridge Parkway, Suite 301
                                           Cambridge, MA 02142
                                           Telephone: (617) 482-3700
                                           Fax: (617) 482-3003
                                           Tom@hbsslaw.com
                                           Davidn@hbsslaw.com
                                           Lauren@hbsslaw.com
                                           Kristenj@hbsslaw.com
                                           JessicaM@hbsslaw.com
                                           RochellaD@hbsslaw.com

                                           Shana E. Scarlett (SBN 217895)
                                           **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                           715 Hearst Avenue, Suite 202
                                           Berkeley, CA 94710
                                           Telephone: (510) 725-3000
                                           Fax: (510) 725-3001
                                           shanas@hbsslaw.com

---

[49] *Id.* at 64:19-65:17.

[50] *Id.* at 75:2-7.

-10-

Steve D. Shadowen (admitted *pro hac vice*)
Richard Brunell (admitted *pro hac vice*)
Tina J. Miranda (admitted *pro hac vice*)
Matthew C. Weiner (admitted *pro hac vice*)
**HILLIARD & SHADOWEN LLP**
1135 W. 6th Street, Suite 125
Austin, TX 78703
Telephone: (855) 344-3298
steve@hilliardshadowenlaw.com
rbrunell@hilliardshadowenlaw.com
tmiranda@hilliardshadowenlaw.com
matt@hilliardshadowenlaw.com


Joseph M. Vanek (*admitted pro hac vice*)
David P. Germaine (*admitted pro hac vice*)
Eamon P. Kelly (*admitted pro hac vice*)
Daniel Shmikler (*admitted pro hac vice*)
Alberto Rodriguez (*admitted pro hac vice*)
John P. Bjork (*admitted pro hac vice*)
Robert D. Cheifetz (admitted pro hac vice)
**SPERLING & SLATER**
55 W. Monroe Street, Suite 3200
Chicago, IL 60603
jvanek@sperling-law.com
dgermaine@sperling-law.com
ekelly@sperling-law.com
dshmikler@sperling-law.com
arodriguez@sperling-law.com
jbjork@sperling-law.com
robc@sperling-law.com

*Co-Lead Counsel for Direct Purchaser Class*


Anna T. Neill (SBN 270858)
Scott E. Perwin (*admitted pro hac vice*)
Lauren C. Ravkind (*admitted pro hac vice*)
**KENNY NACHWALTER P.A.**
Four Seasons Tower, Suite 1100
1441 Brickell Avenue
Miami, FL 33131
Telephone: (305) 373-1000
Facsimile: (305) 372-1861
sperwin@knpa.com
lravkind@knpa.com

*Counsel for Walgreen Co., Kroger Co., Albertsons
Companies, Inc., Hy-Vee, Inc., and H-E-B LP*


Barry L. Refsin (*admitted pro hac vice*)
Alexander J. Egerváry (*admitted pro hac vice*)

1    Chelsea M. Nichols (*admitted pro hac vice*)
     Caitlin V. McHugh (*admitted pro hac vice*)
2    HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
     One Logan Square, 27th Floor
3    Philadelphia, PA 19103
     (215) 496-7031
4    brefsin@hangley.com
     aegervary@hangley.com
5    cnichols@hangley.com
     cmchugh@hangley.com
6

7    Monica L. Kiley (*admitted pro hac vice*)
     Eric L. Bloom (*admitted pro hac vice*)
8    HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
     2805 Old Post Road, Suite 100
9    Harrisburg, PA 17110
     (717) 364-1030
10   mkiley@hangley.com
     ebloom@hangley.com
11

12   *Counsel for Rite Aid and CVS Pharmacy*

13   Peter D. St. Phillip (admitted *pro hac vice*)
     Uriel Rabinovitz (admitted *pro hac vice*)
14   LOWEY DANNENBERG, P.C..
     44 South Broadway, Suite 1100
15   White Plains, NY 10601
     Telephone: (914) 997-0500
16   PStPhillip@lowey.com
     URabinovitz@lowey.com
17

18   Todd M. Schneider
     Jason H. Kim
19   Matthew S. Weiler
     SCHNEIDER WALLACE COTTRELL KONECKY LLP
20   2000 Powell Street, Suite 1400
     Emeryville, CA 94608
21   Telephone: (415) 421-7100
     TSchneider@schneiderwallace.com
22   JKim@schneiderwallace.com
     MWeiler@schneiderwallace.com
23

24   *Counsel for Plaintiff Humana Inc.*

25

26

27

28

PURCHASERS' MOTION TO EXCLUDE OPINIONS OF DR. BRUCE STROMBOM
3:19-cv-05822-WHA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I, Lauren G. Barnes, certify that, on this date, I served the foregoing document on counsel for Defendants Bausch Health Companies, Inc., Salix Pharmaceuticals, Ltd., Salix Pharmaceuticals, Inc., Santarus, Inc., Assertio Therapeutics, Inc., Lupin Pharmaceuticals, Inc. and Lupin Ltd. Inc., by electronic mail and by causing this document to be filed with the Court via the Court's electronic case files (or "ECF") system.

Dated: January 15, 2021                           */s/  Lauren Guth Barnes*
                                                   Lauren Guth Barnes


## FILER'S ATTESTATION

Pursuant to Local Rule 5-1(i)(3) of the Northern District of California, regarding signatures, I, Lauren G. Barnes, attest that concurrence in the filing of this document has been obtained.

Dated: January 15, 2021                           */s/  Lauren Guth Barnes*
                                                   Lauren Guth Barnes

PURCHASERS' MOTION TO EXCLUDE OPINIONS OF DR. BRUCE STROMBOM
3:19-cv-05822-WHA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| *IN RE GLUMETZA ANTITRUST LITIGATION* | Case No.: 3:19-cv-05822-WHA |
| This Document Relates To: | **[PROPOSED] ORDER GRANTING PURCHASERS' MOTION TO EXCLUDE OPINIONS OF DR. BRUCE STROMBOM** |
| All Actions | |

Before the Court is Purchasers' motion to exclude opinions of Dr. Bruce Strombom. Having considered the motion, the Court GRANTS Purchasers' Motion and ORDERS that Dr. Strombom is precluded from testifying at trial or otherwise opining in this case that: (1) purchasers' overcharge damages should be reduced by indirect rebates (paragraphs 18-19 and 54-68 of Dr. Strombom's report); or (2) Defendants' settlement in this case had procompetitive benefits (paragraphs 17 and 47-53 of Dr. Strombom's report).

**IT IS SO ORDERED.**

**Dated:** _____

_____
Hon. William Alsup
United States District Judge