Thomas M. Sobol (admitted *pro hac vice*)
Lauren G. Barnes (admitted *pro hac vice*)
Jessica R. MacAuley (admitted *pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone: (617) 482-3700
Fax: (617) 482-3003
Tom@hbsslaw.com
Lauren@hbsslaw.com
JessicaM@hbsslaw.com

Shana E. Scarlett (SBN 217895)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Fax: (510) 725-3001
shanas@hbsslaw.com

*Co-Lead Counsel for the Direct Purchaser Class*

*Additional counsel on signature page*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| *IN RE GLUMETZA ANTITRUST LITIGATION* | Case No.: 3:19-cv-05822-WHA |
| This Document Relates To:<br><br>All Actions | **PLAINTIFFS' MOTION TO EXCLUDE CERTAIN OPINIONS OF DEFENDANTS' EXPERT DR. CATHERINE TUCKER**<br><br>**ORAL ARGUMENT REQUESTED**<br>Date: April 22, 2021<br>Time: TBD<br>Courtroom: TBD |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on April 22, 2021 at 8:00 a.m., or as soon thereafter as the matter may be heard before the Honorable William Alsup, at a location and manner to be determined in accordance with the Rules and Covid-19 guidance issued by the Northern District and Judge Alsup, the Direct Purchasers Class, Retailers and Humana Inc. (collectively "Purchasers") will and hereby does move this Court for an order to exclude portions of the expert report of Dr. Catherine Tucker ("Tucker Report") from summary judgment and trial of this action (the "Motion").

Purchasers move on the grounds that the Tucker Report fails to comply with the requirements of Fed. R. Evid. 702 and the standards established in *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579 (1993) and its progeny.  Purchasers' Motion is based on this Notice of Motion and Motion, the memorandum, incorporated herein, the Declaration of Jessica R. MacAuley ("MacAuley Decl.") and supporting exhibits, concurrently filed herewith, all pleadings and papers filed in this matter and in support of Purchasers' Motion, and on such further argument as may be presented at the hearing on this Motion.

Dated: January 15, 2021

Respectfully submitted,

*/s/  Lauren G. Barnes*

Thomas M. Sobol (admitted *pro hac vice*)
David S. Nalven (admitted *pro hac vice*)
Lauren G. Barnes (admitted *pro hac vice*)
Kristen A. Johnson (admitted *pro hac vice*)
Jessica R. MacAuley (admitted *pro hac vice*)
Rochella T. Davis (admitted *pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone: (617) 482-3700
Fax: (617) 482-3003
Tom@hbsslaw.com
Davidn@hbsslaw.com
Lauren@hbsslaw.com
Kristenj@hbsslaw.com

JessicaM@hbsslaw.com
RochellaD@hbsslaw.com

Shana E. Scarlett (SBN 217895)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Fax: (510) 725-3001
shanas@hbsslaw.com

Steve D. Shadowen (admitted *pro hac vice*)
Matthew C. Weiner (admitted *pro hac vice*)
Nicholas Shadowen (admitted *pro hac vice*)
**HILLIARD & SHADOWEN LLP**
1135 W. 6th Street, Suite 125
Austin, TX 78703
Telephone: (855) 344-3298
steve@hilliardshadowenlaw.com
matt@hilliardshadowenlaw.com
nshadowen@hilliardshadowenlaw.com

Joseph M. Vanek (admitted *pro hac vice*)
David P. Germaine (admitted *pro hac vice*)
Eamon P. Kelly (admitted *pro hac vice*)
Daniel A. Shmikler (admitted *pro hac vice*)
Alberto Rodriguez (admitted *pro hac vice*)
John P. Bjork (admitted *pro hac vice*)
Robert D. Cheifetz (admitted *pro hac vice*)
**SPERLING & SLATER**
55 W. Monroe Street, Suite 3200
Chicago, IL 60603
jvanek@sperling-law.com
dgermaine@sperling-law.com
ekelly@sperling-law.com
dshmikler@sperling-law.com
arodriguez@sperling-law.com
jbjork@sperling-law.com
robc@sperling-law.com
*Co-Lead Counsel for Direct Purchaser Class*

Anna T. Neill (SBN 270858)
Scott E. Perwin (admitted *pro hac vice*)
Lauren C. Ravkind (admitted *pro hac vice*)
KENNY NACHWALTER P.A.
Four Seasons Tower, Suite 1100
1441 Brickell Avenue
Miami, FL 33131
Telephone: (305) 373-1000
Facsimile: (305) 372-1861
sperwin@knpa.com
lravkind@knpa.com

*Counsel for Walgreen Co., Kroger Co., Albertsons
Companies, Inc., Hy-Vee, Inc., and H-E-B LP*

Barry L. Refsin (admitted *pro hac vice*)
Alexander J. Egerváry (admitted *pro hac vice*)
Chelsea M. Nichols (admitted *pro hac vice*)
Caitlin V. McHugh (admitted *pro hac vice*)
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103
(215) 496-7031
brefsin@hangley.com
aegervary@hangley.com
cnichols@hangley.com
cmchugh@hangley.com

Monica L. Kiley (admitted *pro hac vice*)
Eric L. Bloom (admitted *pro hac vice*)
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
2805 Old Post Road, Suite 100
Harrisburg, PA 17110
(717) 364-1030
mkiley@hangley.com
ebloom@hangley.com

*Counsel for Rite Aid and CVS Pharmacy*

Peter D. St. Phillip (admitted *pro hac vice*)
Uriel Rabinovitz (admitted *pro hac vice*)
LOWEY DANNENBERG, P.C..
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
PStPhillip@lowey.com
URabinovitz@lowey.com

Todd M. Schneider
Jason H. Kim
Matthew S. Weiler
**Schneider Wallace Cottrell Konecky LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
TSchneider@schneiderwallace.com
JKim@schneiderwallace.com
MWeiler@schneiderwallace.com

*Counsel for Plaintiff Humana Inc.*

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................................ 1

II.   LEGAL STANDARD ......................................................................................................... 2

III.  ARGUMENT ...................................................................................................................... 2

    A.  Dr. Tucker's opinion that the brand defendants' marketing commitments in the Lupin settlement agreement were procompetitive should be excluded as irrelevant under the law governing this case. .................................................................................. 2

        1.  Defendants must prove a procompetitive justification for the no-AG promise, not ancillary provisions of the Lupin settlement. ................................................. 2

        2.  Dr. Tucker's opinion that the marketing commitments in the Lupin settlement were procompetitive is untethered to the challenged restraint and thus irrelevant. ...................................................................................................... 4

        3.  Dr. Tucker's opinion is not relevant to rebut purchasers' experts. ................. 5

        4.  Dr. Tucker's failure to consider the brand defendants' preexisting marketing commitments separately renders her opinion inadmissible. ............................ 6

    B.  Dr. Tucker's opinion regarding Sun's probability of success in its patent litigation should be excluded because she is not qualified to offer it, and it is unreliable and unduly prejudicial. ................................................................................................ 7

IV.   CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Microtherm, Inc. v. Norman Wright Mech. Equip. Corp.,*
    No. C 04-02266 JW, 2010 WL 11575000 (N.D. Cal. Aug. 30, 2010)....................................9

*Daubert v. Merrell Dow Pharm., Inc.,*
    509 U.S. 579 (1993) ........................................................................................................ 2, 9

*FTC v. Actavis,*
    570 U.S. 136 (2013) .................................................................................................... 2, 3, 5

*Estate of Gonzales v. Hickman,*
    No. ED CV 05-660, 2007 WL 3237727 (C.D. Cal. May 30, 2007) .....................................6

*Graphic Prods. Distribs. v. Itek Corp.,*
    717 F.2d 1560 (11th Cir. 1983)..........................................................................................3

*Huezo v. Los Angeles Cmty. College Dist.,*
    No. CV 04-9772, 2007 WL 7289347 (C.D. Cal. Feb. 27, 2007) ...........................................8

*In re Impax Labs., Inc.,*
    2019-1 Trade Cas. P 80723, 2019 WL 1552939, at *31 (F.T.C. Mar. 28, 2019)....................3, 4, 5

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.,*
    No. 2:06-cv-1797, 2015 WL 5783603 (E.D. Pa. Oct. 5, 2015) ...........................................3

*King Drug Co. of Florence v. Smithkline Beecham Corp.,*
    791 F.3d 388 (3d Cir. 2015)...............................................................................................3

*In re Loestrin 24 Fe Antitrust Litig.,*
    433 F. Supp. 3d 274 (D.R.I. 2019).....................................................................................3

*McGlinchy v. Shell Chem. Co.,*
    845 F.2d 802 (9th Cir. 1988) .................................................................................. 6, 7, 9, 10

*N. Tex. Speciality Physicians v. FTC,*
    528 F.3d 346 (5th Cir. 2008) ......................................................................................... 3, 4

*In re NCAA Athletic Grant-in-Aid Cap Antitrust Litig.,*
    958 F.3d 1239 (9th Cir. 2020), *cert. granted*, __ U.S. __, 2020 WL 7366281 (Dec. 16, 2020).............................................................................................................................2

*NCAA v. Bd. of Regents,*
    468 U.S. 85 (1984) ..............................................................................................................3

*O'Bannon v. NCAA,*
    802 F.3d 1049 (9th Cir. 2015)............................................................................................3

-ii-

*Park W. Galleries, Inc. v. Glob. Fine Art Registry, LLC,*
    No. 2:08–cv–12247, 2010 WL 891695 (E.D. Mich. Mar. 8, 2010) .......................................... 8

*Primiano v. Cook,*
    598 F.3d 558 (9th Cir. 2010) ..................................................................................................... 2

*Realcomp II, Ltd. v. FTC,*
    635 F.3d 815 (6th Cir. 2011) ..................................................................................................... 3

*In re Solodyn Antitrust Litig.,*
    No. 14–md–02503, 2018 WL 734655 (D. Mass. Feb. 6, 2018)................................................. 3

*United States v. Visa U.S.A., Inc.,*
    344 F.3d 229 (2d Cir. 2003) ...................................................................................................... 3

*W. Parcel Express v. United Parcel Serv. of Am., Inc.,*
    65 F. Supp. 2d 1052 (N.D. Cal. 1998)...................................................................................... 6

*In re Wellbutrin XL Antitrust Litig.,*
    133 F. Supp. 3d 734 (E.D. Pa. 2015), *aff'd*, 868 F.3d 132 (3d Cir. 2017) ............................. 3

**Other Authorities**

Fed. R. Evid. 403.................................................................................................................... 2, 6, 7, 10

Fed. R. Evid. 702........................................................................................................................... 2, 6

# I.    INTRODUCTION

Pursuant to *Daubert* and Federal Rules of Evidence 702 and 403, Purchasers move to exclude two opinions of defendants' expert, Dr. Catherine Tucker, as contrary to law, irrelevant, and unreliable.[1]

First, Dr. Tucker's opinion that the agreement between brand defendants[2] and Lupin to promote Glumetza was procompetitive should be excluded because it does not fit any issue in this case. Dr. Tucker has admitted that she has no opinion regarding any procompetitive benefits of the no-AG provision and instead claims that the separate provision in the settlement agreement requiring the brand defendants to promote Glumetza was procompetitive. But antitrust rule-of-reason cases like this one require defendants to justify the challenged restraint – here, the no-AG provision – not the settlement agreement as a whole or its ancillary provisions. Because Dr. Tucker's opinions on the procompetitive benefits of ancillary provisions are untethered to the no-AG provision, they are contrary to law and irrelevant.

Second, without any expertise in patent law or the science at issue in the underlying patent litigation, Dr. Tucker, an economist and professor of management, seeks to offer opinions regarding Sun's chances of success in that litigation. An expert's opinions are admissible only if they are within her area of expertise and, even then, only if they are based on a reliable methodology. Dr. Tucker lacks the qualifications to testify regarding Sun's chances of prevailing in its patent litigation: she is not a patent attorney and has no expertise in evaluating patent litigation, interpreting patents, or assessing infringement allegations. Her opinions on the chances of success – and her analysis based on those chances – have no basis in the record and are unreliable. They should be excluded.

---

[1] This motion relates to the Expert Report of Catherine Tucker, Ph.D., served on August 21, 2020 ("Tucker Rep."). (The report is attached as Exhibit 3005 to the Declaration of Jessica R. MacAuley in Support of Plaintiffs' Daubert Motions.) That report purports to respond to the opinions of purchasers' economic experts, Dr. Thomas McGuire and Dr. Keith Leffler, regarding the competitive effects of defendants' no-authorized-generic ("no-AG") promise and the alternative generic entry dates that would have been profitable to defendants had they not entered into the reverse-payment provision.

[2] Brand defendants are Depomed (now Assertio) and Santarus (now Bausch).

## II.     LEGAL STANDARD

Expert testimony is admissible pursuant to Federal Rule of Evidence 702 only if it is offered by a qualified expert, reliable, and relevant.[3] Rule 702 requires that an expert be "qualified as an expert by knowledge, skill, experience, training, or education."[4] "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And, it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline."[5] Because expert testimony can be particularly persuasive, even testimony that satisfies the three-part test of Rule 702 and *Daubert* should still be scrutinized under Rule 403 and excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury.[6]

## III.     ARGUMENT

A.    **Dr. Tucker's opinion that the brand defendants' marketing commitments in the Lupin settlement agreement were procompetitive should be excluded as irrelevant under the law governing this case.**

1.    **Defendants must prove a procompetitive justification for the no-AG promise, not ancillary provisions of the Lupin settlement.**

Reverse-payment settlement agreements are evaluated under the rule of reason.[7] Under this framework, the plaintiff bears the initial burden of showing that the challenged restraint "produces significant anticompetitive effects within a relevant market"; the defendant then "must come forward with evidence of the restraint's procompetitive benefits."[8] The law is clear that the challenged restraint is what is subject to the rule of reason. The rule of reason balances the alleged anticompetitive effects and procompetitive benefits of the restraint. Accordingly, a defendant seeking to rebut a term challenged as a reverse payment must justify "the presence of the

---

[3] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

[4] FED. R. EVID. 702.

[5] *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (internal quotations and citation omitted).

[6] *See Daubert*, 509 U.S. at 595.

[7] *FTC v. Actavis*, 570 U.S. 136, 159 (2013).

[8] *In re NCAA Athletic Grant-in-Aid Cap Antitrust Litig.*, 958 F.3d 1239, 1256 (9th Cir. 2020), *cert. granted*, __ U.S. __, 2020 WL 7366281 (Dec. 16, 2020).

1  challenged *term* and  show[ ]the lawfulness of *that term* under the rule of reason."[9] The defendant's

2  burden is to prove that the restraint produces procompetitive benefits and is reasonably necessary

3  to achieve them – i.e., a defendant may not claim procompetitive justifications for the settlement as

4  a whole, when those same justifications could be obtained in a settlement without the restraint.[10]

5       Here, because purchasers challenge defendants' no-AG promise, any procompetitive

6  justification must explain that restraint as something other than a payment for delay and show that

7  it, as opposed to other provisions of the settlement, is procompetitive.

8

9

10

11      [9] *Actavis*, 570 U.S. at 156 (emphasis added). The FTC has specifically concluded that the procompetitive justifications offered by a defendant must explain the reverse payment itself, not the

12  agreement as a whole. *In re Impax Labs., Inc.*, 2019-1 Trade Cas. P 80723, 2019 WL 1552939, at *31 (F.T.C. Mar. 28, 2019) ("For purposes of procompetitive justifications, we look at the specific restraint, not the agreement as a whole."), *app. pending, Impax Labs., Inc. v. FTC*, No. 19-60394 (5th

13  Cir.); *accord King Drug Co. of Florence v. Smithkline Beecham Corp.*, 791 F.3d 388, 412 (3d Cir. 2015) ("[T]he burden then shifts to the defendant to show 'that legitimate justifications are present,

14  thereby explaining the presence of the challenged *term* and showing the lawfulness of that *term* under the rule of reason.'" (quoting *Actavis*, 570 U.S. at 154–56) (emphasis added)).

15      A few district courts have taken a contrary approach, allowing defendants to offer procompetitive benefits of the settlement agreement as a whole. *See, e.g., In re Loestrin 24 Fe*

16  *Antitrust Litig.*, 433 F. Supp. 3d 274, 322 (D.R.I. 2019); *In re Solodyn Antitrust Litig.*, No. 14–md–02503, 2018 WL 734655, at *4 (D. Mass. Feb. 6, 2018); *In re Wellbutrin XL Antitrust Litig.*, 133 F.

17  Supp. 3d 734, 753 (E.D. Pa. 2015), *aff'd*, 868 F.3d 132 (3d Cir. 2017); *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, No. 2:06-cv-1797, 2015 WL 5783603, at *9 (E.D. Pa. Oct. 5, 2015). These cases are

18  not persuasive. None address the specific language of *Actavis* requiring a defendant to justify the anticompetitive "term" itself. *See Impax*, 2019 WL 1552939, at *35 ("We decline to follow

19  *Wellbutrin*, to the extent it is inconsistent with *Actavis*'s instruction that the burden is on the defendant to justify the restraint itself."). Nor do they address the requirement, explained by

20  numerous circuit courts cited below, that the defendant prove that the restraint was necessary to achieve the purported benefit.

21      [10] *NCAA v. Bd. of Regents*, 468 U.S. 85, 104 (1984) ("[T]he essential inquiry [is] . . . whether or

22  not *the challenged restraint* enhances competition. . . . [T]he criterion to be used in judging the validity of a restraint on trade is *its* impact on competition." (emphasis added)); *O'Bannon v. NCAA*,

23  802 F.3d 1049, 1073–74 (9th Cir. 2015) (holding that defendant must show that the restraint itself "brings about some procompetitive *effect*," because "not every rule adopted by the NCAA that

24  restricts the market is necessary" to achieve the proffered benefit); *Realcomp II, Ltd. v. FTC*, 635 F.3d 815, 834–36 (6th Cir. 2011) (rejecting proffered procompetitive justifications because

25  defendant failed to establish a connection between those benefits and the restraint); *N. Tex. Speciality Physicians v. FTC*, 528 F.3d 346, 368-70 (5th Cir. 2008) (rejecting proffered

26  procompetitive benefits because they were not generated by the challenged restraint of trade); *United States v. Visa U.S.A., Inc.*, 344 F.3d 229, 243 (2d Cir. 2003) (rejecting proffered

27  procompetitive benefit because the restriction was "not necessary to accomplish that goal"); *Graphic Prods. Distribs. v. Itek Corp.*, 717 F.2d 1560, 1576-78 (11th Cir. 1983) (defendant failed to show that

28  the restriction itself was "reasonably necessary to achieve" the alleged procompetitive purpose).

**2.      Dr. Tucker's opinion that the marketing commitments in the Lupin settlement were procompetitive is untethered to the challenged restraint and thus irrelevant.**

Dr. Tucker did not attempt to provide a procompetitive justification for the no-AG provision,[11] opining instead that the brand defendants' agreement to engage in certain marketing efforts was procompetitive because those efforts may have benefitted consumers.[12] But, as the FTC has explained, "an antitrust defendant cannot salvage an anticompetitive reverse payment merely by pointing to unrelated terms in the same settlement agreement."[13] There must be a "logical nexus" between the alleged restraint and a procompetitive justification.[14]

Dr. Tucker admitted that she had not identified any such "logical nexus" between the no-AG provision and the marketing commitment:

> Q. So you have no opinion in this case that the marketing requirement was included because of the no-AG agreement, right?
>
> A. So no . . . . The marketing agreement was something that Lupin asked for. Lupin was also asking for the no-AG agreement, and I have not seen evidence that there was some trade-off between them.[15]

Dr. Tucker further conceded that the supposed procompetitive benefits of the marketing commitment were relevant only if the Lupin settlement were considered "as a whole."[16] But purchasers do not challenge defendants' right to settle patent litigation. As the Supreme Court explicitly recognized, Hatch-Waxman litigants have every right to settle lawsuits – without

---

[11] Ex. D. to MacAuley Decl., Remote Videotaped Deposition of Catherine Tucker at 114:14–115:5, Oct. 21, 2020 ("I'm offering an opinion of the procompetitive benefits on the settlement as a whole, but not on that individual part of the agreement [i.e., the no-AG provision].").

[12] Ex. 3005, Tucker Rep. ¶¶ 120-32.

[13] *Impax*, 2019 WL 1552939, at *32.

[14] *N. Tex. Speciality Physicians*, 528 F.3d at 370-71.

[15] Ex. D, Tucker Dep. at 246:25-247:8.

[16] *Id.* at 114:15-115:5, 245:1-246:24.

1 reverse payments.[17] Hence, defendants must explain and justify the challenged term, not the

2 settlement as a whole.[18]

3     **3.**     **Dr. Tucker's opinion is not relevant to rebut purchasers' experts.**

4     Dr. Tucker suggested that her opinion that the brand defendants' marketing commitment

5 was procompetitive is offered to rebut Prof. McGuire's opinion that the commitment was an

6 anticompetitive payment.[19] This argument fails to make Dr. Tucker's opinion relevant to this case.

7     Prof. McGuire concluded that it was *possible* that the market commitment *could* have been "a

8 form of pay from the Brand Defendants [sic]" to Lupin, but he assumed that it was *not*.[20] Indeed,

9 neither Prof. McGuire nor Dr. Leffler valued the marketing commitment as part of the brand

10 defendants' reverse payment to Lupin.[21] And, when projecting the offense-free scenarios for a

11 settlement without a reverse payment, both Prof. McGuire and Dr. Leffler left the marketing

12 commitment in place, i.e., neither of them restored the promotional expenditures to the expected

13 earnings of the brand defendants; they instead assumed the marketing commitment would exist in a

14 payment-free settlement.[22] Since neither of plaintiffs' economists treated the marketing

15 commitment as a reverse payment, there is no anticompetitive-effect opinion to rebut, and

16 testimony regarding its supposed procompetitive effect is irrelevant.

17

18

19

20     [17] *Actavis*, 570 U.S. at 158 (explaining that Hatch-Waxman litigants "may, as in other

21 industries, settle in other ways, for example, by allowing the generic manufacturer to enter the patentee's market prior to the patent's expiration, without the patentee paying the challenger to

22 stay out prior to that point"); *see also Impax*, 2019 WL 1552939, at *40 (stressing that "branded and generic pharmaceutical companies routinely – and far more often than not – settle patent litigation

23 disputes without reverse payments").

24     [18] *See Impax*, 2019 WL 1552939, at *32 ("[T]he defendant has the burden to explain and justify the payment itself, not the settlement as a whole . . . .").

25     [19] Ex. 3005, Tucker Rep. ¶¶ 120–21.

26     [20] Ex. 4070 to MacAuley Decl., Expert Report of Professor Thomas G. McGuire ("McGuire Rep.") ¶ 101 n.168.

27     [21] *See id.* ¶¶ 101–11; Ex. 4310 to MacAuley Decl., Expert Report of Keith Leffler, Ph. D. ("Leffler Rep.") ¶¶ 76–79.

28     [22] *See* Ex. 4070, McGuire Rep. ¶¶ 152–54; Ex. 4310, Leffler Rep. ¶¶ 88–92.

**4.      Dr. Tucker's failure to consider the brand defendants' preexisting marketing commitments separately renders her opinion inadmissible.**

Dr. Tucker's opinion that the marketing commitments in the Lupin settlement benefitted consumers should also be excluded because she failed to take into account that, prior to the Lupin settlement, Depomed and Santarus had already agreed to marketing commitments for Glumetza exceeding those in the Lupin settlement.[23]

An expert must not only employ reliable principles and methods, but apply them "to the facts of the case,"[24] meaning, *inter alia*, that analysis must be based on the facts of record.[25] When no specific facts support an expert's opinion, and the undisputed evidence of record contradicts it, the opinion is inadmissible.[26] No facts of record support Dr. Tucker's opinion that there were procompetitive benefits from the marketing commitments in the Lupin settlement, given the undisputed and contradictory fact that Santarus had already contractually committed to a *greater* level of marketing.

At a minimum, Dr. Tucker's opinion that marketing Glumetza to doctors and the public would benefit consumers is inadmissible pursuant to Federal Rule of Evidence 403, in that any possible relevance is outweighed by the risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, [or] wasting time."[27] It would be prejudicial to purchasers, and a needless

---

[23] *Compare* Ex. 4070, McGuire Rep. ¶ 15 (under July 2008 promotional agreement between Depomed and Santarus, "Santarus agreed to pay Depomed a $12 million upfront fee and additional potential milestone fees of up to $16 million. Depomed would pay Santarus fees ranging from 75% to 80% of Glumetza's gross margin."), *with id.* ¶ 31 (under Lupin settlement, Depomed and Santarus committed to spend $4 million per year on Glumetza advertising, marketing, and educational expenses); *see also* Ex. 3005, Tucker Rep. ¶ 131 (speculating that, absent the marketing provision in the Lupin settlement agreement, marketing of Glumetza might have stopped one year earlier than with the agreement, without taking into account that this would have been a breach of Santarus's contractual commitment to Depomed).

[24] FED. R. EVID. 702.

[25] *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 807 (9th Cir. 1988) (excluding expert's "speculation" that "has no basis in the record," and instead "rests on unsupported assumptions and ignores distinctions crucial to arriving at a valid conclusion").

[26] *Estate of Gonzales v. Hickman*, No. ED CV 05-660, 2007 WL 3237727, at *3 n.34 (C.D. Cal. May 30, 2007) (collecting cases); *cf. W. Parcel Express v. United Parcel Serv. of Am., Inc.*, 65 F. Supp. 2d 1052, 1060 (N.D. Cal. 1998) ("When expert opinions are not supported by sufficient facts, or when the indisputable record contradicts or otherwise renders the opinions unreasonable, they cannot be relied upon.").

[27] FED. R. EVID. 403.

1    sideshow, to extend the trial to address a "benefit" that pre-existed the Lupin settlement

2    agreement.[28]

3    **B.    Dr. Tucker's opinion regarding Sun's probability of success in its patent litigation**
     **should be excluded because she is not qualified to offer it, and it is unreliable and**
4    **unduly prejudicial.**

5        In modeling alternative generic entry dates that would have been profitable to defendants

6    absent the no-AG provision, Prof. McGuire and Dr. Leffler both employed inputs based on the

7    chances that Lupin, the first ANDA filer, and Sun, the second ANDA filer, would have prevailed in

8    the patent litigation brought by Depomed. For these inputs, they relied on Edward Lentz, an

9    experienced patent lawyer and purchasers' patent expert, who offered his opinions as to how a

10   reasonable patent attorney would contemporaneously have assessed the two cases. While

11   defendants offer Prof. Martin Adelman as a patent expert to counter Mr. Lentz's opinion with

12   respect to the Lupin patent litigation, they rely only on Dr. Tucker regarding the Sun litigation.

13   She has opined that Mr. Lentz's conclusion that Sun had an 80-85% chance of success in the patent

14   litigation was too high, and recalculated the results of the models of Prof. McGuire and Dr. Leffler

15   using 70%, 60%, and 50% as alternative estimates of Sun's chances of prevailing in the patent

16   litigation.[29] Dr. Tucker is not qualified to assess the merits of patent litigation, and the quantitative

17   assessments that she uses in her critique are unreliable and prejudicial because they are not

18   supported by anything in the record of this case.

19       Dr. Tucker has no training as a patent lawyer (or any type of lawyer), no expertise in

20   prosecuting patents or patent construction, has never been retained to give an opinion as to

21   whether a patent is valid, and conceded that she is not qualified to opine on a generic drug maker's

22   chances of winning patent litigation with the brand manufacturer.[30] Such lay legal opinions are not

23

24

25

26       [28] *See McGlinchy*, 845 F.2d at 807 ("Lacking any sound foundation, the study would mislead a
     jury into believing that damages had grown exponentially over the relevant period.").

27       [29] Ex. 3005, Tucker Rep. ¶ 91 & Fig. 8.

28       [30] Ex. D, Tucker Dep. at 27:1-29:9, 34:4-23, 93:2-94:6.

1  admissible: "Legal opinions, when offered by a non-lawyer lay witness, are both 'incompetent and

2  unpersuasive.'"[31]

3      Nevertheless, Dr. Tucker has repeatedly offered opinions on patent issues outside the scope

4  of her expertise as an economist and professor of management. She opined that the conclusions of

5  Mr. Lentz were mere "hindsight,"[32] despite having no expertise to evaluate the evidence that

6  existed at the time of the settlement. She asserted that parties to the litigation may have believed

7  that Depomed had a high chance of succeeding in the patent litigation based on research presenting

8  statistics about the results in Patent Trial Appeal Board ("PTAB") proceedings that she

9  misconstrued to be the same as district court proceedings.[33] Similarly, Dr. Tucker rejected the

10  specific conclusions of Mr. Lentz, a trained patent lawyer, that Sun's chances of success would have

11  been greater than Lupin's, based on her selective reading of Mr. Lentz's report, in which he noted

12  that the claim construction issues in the Sun litigation were substantially similar to those in the

13  Lupin case.[34] Dr. Tucker admitted that she did not know whether the claim construction had any

14  effect on the assessment of Sun's chances at the time.[35] In fact, as Mr. Lentz explained in his report,

15  there were key differences between the two infringement actions having nothing to do with claim

16  construction. Sun's formulation of its generic product was markedly different from Lupin's, and its

17  non-infringement case was significantly stronger.[36] Dr. Tucker not only is unqualified to assess

18  whether Sun's formulation infringed, but "could not say" precisely how the formulation difference

19

20      [31] *Park W. Galleries, Inc. v. Glob. Fine Art Registry, LLC*, No. 2:08-cv-12247, 2010 WL 891695, at
    *2 (E.D. Mich. Mar. 8, 2010) (quoting *United States v. Canipe*, 569 F.3d 597, 603 (6th Cir. 2009));
21  *accord Huezo v. Los Angeles Cmty. College Dist.*, No. CV 04-9772, 2007 WL 7289347, at *6 (C.D. Cal.
    Feb. 27, 2007) ("Credibility aside, a lay witness's legal opinions are simply irrelevant." (quotations
22  and citation omitted)).

23      [32] Ex. 3005, Tucker Rep. ¶ 89.

24      [33] *See* Ex. 3005, Tucker Rep. ¶ 90; Ex. D, Tucker Dep. at 180:9-182:11 (admitting that she did
    not know "off the top of [her] head" what the PTAB is but that it is different from a district court,
25  and that she did not consider statistics about a patent holder's chances of success in ANDA cases in
    district courts).

26      [34] Ex. 3005, Tucker Rep. ¶ 89 & n.122.

27      [35] Ex. D, Tucker Dep. at 172:14-22.

28      [36] *See* Ex. 4223 to MacAuley Decl., Expert Report of Edward T. Lentz ("Lentz Rep.") ¶¶ 275-
    348.

1  was taken into account by the parties in assessing Sun's prospects at the time.[37]

2  Dr. Tucker further admitted that she has no reason to believe that the percentages she

3  offered in her report for Sun's chances of success are accurate, reflect what reasonable companies in

4  the positions of defendants might have expected, or reflect what the parties believed at the time: "I

5  am not trying to put forward those percentages. . . . I'm certainly not asserting that these are the

6  right probabilities to use."[38] At her deposition, Dr. Tucker characterized her analysis using the

7  percentages as simply showing that the models of Prof. McGuire and Dr. Leffler are sensitive to

8  inputs such as the probability of Sun's success.[39] However, in her report, Dr. Tucker assumed that

9  the percentages that she used were reasonable: "I therefore assume that, at the time they were

10  negotiating the Lupin Agreement, the parties may have had expectations of Sun's chance of

11  winning its litigation for 70%, 60%, and 50% probability projections of Sun winning its lawsuit."[40]

12  There is no basis for this assumption. Dr. Tucker is not qualified to support it herself, and there is

13  nothing else in the record to support it. Unlike purchasers' economic experts, who relied on a

14  patent expert for their assumptions regarding Sun's chances of success, Dr. Tucker bases these

15  speculations only on her own, admittedly unqualified, assessment that Sun's actual chances were

16  significantly lower.

17  Accordingly, Dr. Tucker's unsupported assessment of the patent case and any analysis that

18  flows from it is unreliable and should be excluded under *Daubert*.[41] Even if Dr. Tucker had the

19  requisite qualifications, the lack of any methodology would require exclusion of this opinion.[42]

20

21

---

22  [37] Ex. D, Tucker Dep. at 173:15-21.

    [38] *Id.* at 175:15-176:8.

23  [39] *Id.*

24  [40] Ex. 3005, Tucker Rep. ¶ 91.

25  [41] *See McGlinchy*, 845 F.2d at 807 (excluding expert testimony relying on arbitrary compound growth rate and thus "rest[ed] on unsupported assumptions and unsound extrapolation").

26  [42] *See Advanced Microtherm, Inc. v. Norman Wright Mech. Equip. Corp.*, No. C 04-02266 JW, 2010 WL 11575000, at *3 (N.D. Cal. Aug. 30, 2010) (excluding opinion based on the expert's "industry experience," when he "does not disclose the methodology that he employed to determine his 50% figure, nor provide any sort of empirical testing showing that his theory or technique is falsifiable, refutable, or testable").

1    Nor should Dr. Tucker be permitted to offer opinions based on the 70%, 60%, and 50%

2    assumptions simply as a "sensitivity analysis" to illustrate the effects of changing assumptions

3    about Sun's chances of success. First, this attempt at her deposition to cast her opinion as a

4    sensitivity analysis contradicts the explanation of her opinion provided in her report.[43] Second,

5    pursuant to Rule 403, any potential probative value that the analysis might have as a sensitivity

6    analysis is substantially outweighed by the potential for undue prejudice and confusion. Dr.

7    Tucker's presentation of calculations based on precise estimates of Sun's chances of success would

8    clearly suggest that there is some basis for those estimates when, in fact, they have no support at all

9    in the record. The substantial risk that the jury would misconstrue this analysis as having some

10   support in the record is precisely what Rule 403 is designed to preclude.[44]

11   Accordingly, Dr. Tucker should not be permitted to offer any opinions as to her

12   assessments of Sun's (or Lupin's) chances of success in the patent litigation. Dr. Tucker is not

13   qualified to offer such opinions, her analysis is unreliable, and her analysis based on unsupported

14   assumptions would be unduly prejudicial.

### IV.    CONCLUSION

16   For the foregoing reasons, plaintiffs respectfully request that the Court exclude the opinions

17   of Dr. Tucker that the marketing commitments in the Lupin settlement agreement were

18   procompetitive (summarized in Ex. 3005, Tucker Rep. ¶¶ 120-32) and that purchasers' economists

19   used improper estimates of Sun's chances of success in the patent litigation (summarized in *id.* ¶¶

20   88-91, including Figure 8).

22   Dated: January 15, 2021                     Respectfully submitted,

23                                               */s/   Lauren G. Barnes*
                                                 Thomas M. Sobol (admitted *pro hac vice*)
24                                               David S. Nalven (admitted *pro hac vice*)
                                                 Lauren G. Barnes (admitted *pro hac vice*)
25                                               Kristen A. Johnson (admitted *pro hac vice*)

26   [43] *See supra* notes 38-40 and accompanying text.

27   [44] *See McGlinchy*, 845 F.2d at 806 ("[A]ny probative value [of putative expert testimony lacking
     sound foundation] was substantially outweighed by the danger of unfair prejudice, confusion of the
28   issues, or misleading the jury." (quotation omitted)).

Jessica R. MacAuley (admitted *pro hac vice*)
Rochella T. Davis (admitted *pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone: (617) 482-3700
Fax: (617) 482-3003
Tom@hbsslaw.com
Davidn@hbsslaw.com
Lauren@hbsslaw.com
Kristenj@hbsslaw.com
JessicaM@hbsslaw.com
RochellaD@hbsslaw.com

Shana E. Scarlett (SBN 217895)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Fax: (510) 725-3001
shanas@hbsslaw.com

Steve D. Shadowen (admitted *pro hac vice*)
Matthew C. Weiner (admitted *pro hac vice*)
Nicholas Shadowen (admitted *pro hac vice*)
**HILLIARD & SHADOWEN LLP**
1135 W. 6th Street, Suite 125
Austin, TX 78703
Telephone: (855) 344-3298
steve@hilliardshadowenlaw.com
matt@hilliardshadowenlaw.com
nshadowen@hilliardshadowenlaw.com

Joseph M. Vanek (admitted *pro hac vice*)
David P. Germaine (admitted *pro hac vice*)
Eamon P. Kelly (admitted *pro hac vice*)
Daniel A. Shmikler (admitted *pro hac vice*)
Alberto Rodriguez (admitted *pro hac vice*)
John P. Bjork (admitted *pro hac vice*)
Robert D. Cheifetz (admitted *pro hac vice*)
**SPERLING & SLATER**
55 W. Monroe Street, Suite 3200
Chicago, IL 60603
jvanek@sperling-law.com
dgermaine@sperling-law.com
ekelly@sperling-law.com
dshmikler@sperling-law.com
arodriguez@sperling-law.com
jbjork@sperling-law.com
robc@sperling-law.com

PURCHASERS' MOTION TO EXCLUDE CERTAIN OPINIONS OF DR. CATHERINE TUCKER
3:19-cv-05822-WHA

*Co-Lead Counsel for Direct Purchaser Class*

Anna T. Neill (SBN 270858)
Scott E. Perwin (admitted *pro hac vice*)
Lauren C. Ravkind (admitted *pro hac vice*)
**KENNY NACHWALTER P.A.**
Four Seasons Tower, Suite 1100
1441 Brickell Avenue
Miami, FL 33131
Telephone: (305) 373-1000
Facsimile: (305) 372-1861
sperwin@knpa.com
lravkind@knpa.com

*Counsel for Walgreen Co., Kroger Co., Albertsons Companies, Inc., Hy-Vee, Inc., and H-E-B LP*

Barry L. Refsin (admitted *pro hac vice*)
Alexander J. Egerváry (admitted *pro hac vice*)
Chelsea M. Nichols (admitted *pro hac vice*)
Caitlin V. McHugh (admitted *pro hac vice*)
**HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**
One Logan Square, 27th Floor
Philadelphia, PA 19103
(215) 496-7031
brefsin@hangley.com
aegervary@hangley.com
cnichols@hangley.com
cmchugh@hangley.com

Monica L. Kiley (admitted *pro hac vice*)
Eric L. Bloom (admitted *pro hac vice*)
**HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**
2805 Old Post Road, Suite 100
Harrisburg, PA 17110
(717) 364-1030
mkiley@hangley.com
ebloom@hangley.com

*Counsel for Rite Aid and CVS Pharmacy*

Peter D. St. Phillip (admitted *pro hac vice*)
Uriel Rabinovitz (admitted *pro hac vice*)
**LOWEY DANNENBERG, P.C..**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
PStPhillip@lowey.com
URabinovitz@lowey.com

PURCHASERS' MOTION TO EXCLUDE CERTAIN OPINIONS OF DR. CATHERINE TUCKER
3:19-cv-05822-WHA

Todd M. Schneider
Jason H. Kim
Matthew S. Weiler
**SCHNEIDER WALLACE COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
TSchneider@schneiderwallace.com
JKim@schneiderwallace.com
MWeiler@schneiderwallace.com

*Counsel for Plaintiff Humana Inc.*


## <u>CERTIFICATE OF SERVICE</u>

I, Lauren G. Barnes, certify that, on this date, I served the foregoing document on counsel for Defendants Bausch Health Companies, Inc., Salix Pharmaceuticals, Ltd., Salix Pharmaceuticals, Inc., Santarus, Inc., Assertio Therapeutics, Inc., Lupin Pharmaceuticals, Inc. and Lupin Ltd. Inc., by causing this document to be filed with the Court via the Court's electronic case file (or "ECF") system.

Dated: January 15, 2021                    ***/s/ Lauren Guth Barnes***
                                                           Lauren Guth Barnes


## <u>FILER'S ATTESTATION</u>

Pursuant to Local Rule 5-1(i)(3) of the Northern District of California, regarding signatures, I, Lauren G. Barnes, attest that concurrence in the filing of this document has been obtained.

Dated: January 15, 2021                    ***/s/ Lauren Guth Barnes***
                                                           Lauren Guth Barnes

PURCHASERS' MOTION TO EXCLUDE CERTAIN OPINIONS OF DR. CATHERINE TUCKER
3:19-cv-05822-WHA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| *IN RE GLUMETZA ANTITRUST LITIGATION* | Case No.: 3:19-cv-05822-WHA |
| This Document Relates To:<br><br>All Actions | **[PROPOSED] ORDER GRANTING PURCHASERS' MOTION TO EXCLUDE OPINIONS OF DEFENDANTS' EXPERT DR. CATHERINE TUCKER** |

Before the Court is the Purchasers' Motion to Exclude Certain Opinions of Defendants' Expert Dr. Catherine Tucker. Having considered the motion, the Court GRANTS Purchasers' Motion and ORDERS that Dr. Tucker is precluded from testifying at trial or otherwise that: (1) the marketing commitments in the Lupin settlement agreement were procompetitive (summarized in Tucker Rep. ¶¶ 120-32) and (2) purchasers' economists used improper estimates of Sun's chances of success in the patent litigation (summarized in Tucker Rep. ¶¶ 88-91, including Figure 8).

**IT IS SO ORDERED.**

**Dated: _____**

_____
Hon. William Alsup
United States District Judge